NORFLEET v. BAKER.

(Filed October 7, 1902.)

CHATTEL MORTGAGES—*Mortgages—Liens—Landlord and Tenant.*

A mortgage given by a tenant to a third person on his crop, produced on a certain farm, does not give a lien on rents paid by a sub-tenant of a portion of the farm where such rents are assigned before the execution of the mortgage.

ACTION by G. S. Norfleet and another against G. W. Baker and others, heard by Judge *George H. Brown,* at April Term, 1902, of the Superior Court of BERTIE County. From a judgment for the defendants, the plaintiffs appealed.

*St. Leon Scull,* for the plaintiffs.

*Shepherd & Shepherd,* and *Peebles & Martin,* for the defendants.

COOK, J.   This action was heard upon the facts agreed, upon which his Honor rendered judgment in favor of defendants and plaintiffs appealed.   The facts agreed are as follows, to-wit:

"For the year 1901, Claudius Hyman rented of Freeman Hardy a part of the tract of land in Bertie County known as the 'Snow Field' tract, it also being known as 'Robert Thompson old place.'   On or about January 1, 1901, said Hyman rented to Miles Pugh for said year twenty acres of said land, and was to receive as rent therefor 875 pounds of lint cotton.   On January 19, 1901, said Claudius Hyman, for full value received, sold, transferred and assigned to defendants the said 875 pounds of lint cotton and gave to defendant a written order for same on Miles Pugh, a copy of which is attached marked 'Exhibit B.'   In pursuance of said order, Miles Pugh delivered to defendants the said 875 pounds of lint cotton in the fall of the year 1901, which was worth $61.25.   Said cotton was raised on the 20 acres of land as aforesaid by Miles Pugh, and was cultivated by said Pugh, and not by said Claudius Hyman.   On January 25, 1901, said Hyman executed to plaintiffs a crop lien, a copy of which is hereto attached, marked Exhibit 'A,' and made a part of this statement of agreed facts.   That after January 25, 1901, plaintiffs, in pursuance of said crop lien, advanced to said Claudius Hyman over $300, and there is now due them over $200.   That prior to and on the 25th day of January, 1901, Miles Pugh was living on, and in possession of, the 20 acres of land rented as aforesaid.   Plaintiffs had no actual knowledge of said fact that any part of said land was rented to Pugh when they took the lien."

"Exhibit 'A': Whereas, G. S. Norfleet & Co. have this day agreed to make advances of supplies and money to Claudius Hyman from time to time, as required, during the year 1901, to an amount not to exceed $265, to be by him ex-

pended in the cultivation of a crop during said year upon the following-described lands: A tract of land known as 'Snow Field,' owned by Godwin Cotten, and any other land that he may cultivate during said year. Now, therefore, in consideration of the premises, I do promise to pay the full amount advanced to me on or before the 1st day of November, 1901, and do hereby give to the said G. S. Norfleet & Co. a lien upon all the crops which may be made by me upon said land during said year, to the extent of such advances, in accordance with the statute in such case made and provided; and if I fail to pay the amount so advanced by the time specified, said G. S. Norfleet & Co. shall have power to take possession of said crop and sell the same, the proceeds to be applied to the payment of said advances, and the surplus, if any, to me. Now, also to further secure the payment of the advances to be made as before mentioned, the said Claudius Hyman does hereby sell and convey to the said G. S. Norfleet & Co. all the crops which may be made by him during the said year 1901 upon the above-described lands, and also the following described articles of personal property, to-wit, one dark bay horse named 'Jim,' one gray mare named 'Hector,' one farm cart and wheels, with iron axle, two sows; all of the above property is now in my possession." * * *

The question presented is, does the lien cover the crops made upon the *entire tract* of lands, being those made by Hyman himself and also those made by his tenants, or does it cover *only* those made by Hyman?

From the context of the deed it seems clear to us that his Honor was right in holding that it only covered the crops made by Hyman himself. The advances were made to him "to be by *him* expended in the cultivation of a crop upon the following-described land, * * * and any other land that *he* may cultivate." * * * He placed the lien upon all the crops which may be made by "*me*" (him). And to

NORFLEET *v.* BAKER.

"further secure the payment of the advances    *    *    *    the said Hyman does hereby sell and convey    *    *    *    all the crops which may be made by *him*    *    *    *    upon the above-described land, and also    *    *    *    on dark bay horse," etc. (The italics are ours.)    Was it intended by the parties that any crop, other than that which *Hyman* would cultivate, should be encumbered for the advances? The *particular* crop encumbered is specially mentioned, and therefore any other is excluded. *Expressio unius est exclusio alterius.* The presumption is that, having expressed *some,* they have expressed *all* the conditions by which they intend to be bound under the instrument.    The language used is simple, definite and unequivocal, about the meaning of which there can be no doubt.    Had the parties intended that the *rents* from such land as might be rented by him to others should be also conveyed, they could and should have so stated in the deed, but they did not.    But it is argued that the crops made upon that entire tract of land are necessarily included in the deed. How can this be so? When Pugh rented the land from Hyman, there was no incumbrance upon the land or the crops to be grown thereon, except the lien of the landlord from whom Hyman rented, and that is not involved in this question.    The tenancy of Pugh gave him an estate in the land he rented, and Hyman had no interest in the crops to be grown thereon, except his landlord's lien securing his rent. Hyman could not mortgage Pugh's crop.    It is true the statute vests the constructive possession of the crop in Hyman, Pugh's landlord, but it is limited to the payment of the rent; the rent being paid, the lien and constructive possession vanish.    The rent is a species of incorporeal hereditament, and became the property of Hyman as soon as the land was rented by Pugh, which he had a right to sell, transfer and assign free from all liens, except that of his landlord; which he did sell, assign and transfer to defendants six days before he executed the deed relied upon.

But it is further argued that if plaintiff's deed did not cover all the crops made upon that *entire tract* of land, then Hyman could have rented out all of the land (cultivated none himself) and transferred the rents and defrauded plaintiffs of the entire amount. That might be so, but the deed provides that the advances were agreed to be made "from time to time as required during the year," and it seems that this provision was made to prevent such an imposition. However, that condition does not exist in this case, for it appears that Hyman did make a crop himself, and utilized all of the land, except the 20 acres rented to Pugh. Nevertheless, it is the province of the Courts to construe deeds and contracts so as to give effect to the intention of the parties at the time the contract is made; the terms are made by the parties, by which they are bound, and we can not construe them with reference to a possible breach.

Affirmed.