NO. COA13-681

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

FEDERAL POINT YACHT CLUB
ASSOCIATION, INC., a North
Carolina Corporation,
    Plaintiff,

v.                                     New Hanover County
                                       No. 12 CVS 190
GREGORY MOORE,
    Defendant.


Appeal by defendant from orders entered 18 September and 18 October 2012 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 5 November 2013.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Steven M. Sartorio, and the Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., for plaintiff-appellee.*

*Chleborowicz Law Firm, PLLC, by Christopher A. Chleborowicz, for defendant-appellant.*


BRYANT, Judge.


An association has representational standing to bring a lawsuit provided at least one of its members has suffered imminent harm. Where a defendant fails to join necessary parties to his action, a dismissal of his claim pursuant to N.C. R. Civ. P. 12(b)(7) is appropriate. Where a restrictive covenant must

be enforced, a permanent injunction is the proper remedy. A trial court has discretion to award injunctive relief upon its weighing and balancing of the parties' equities. However, a permanent injunction that prohibits contact between defendant and others without establishing specific boundaries as to when, where, and how the injunction applies is overly broad.

Plaintiff Federal Point Yacht Club Association ("FPYC") is a residential water-access community with appurtenant marina facilities located in Carolina Beach. FPYC has eighteen residential lots, a clubhouse, pool, and marina with 110 boat slips. FPYC is governed by a recorded Declaration of Covenants, which is enforced by a board comprised of community members. Defendant Gregory Moore owns a residence and two boat slips within FPYC.

On 12 August 2010, Moore filed a complaint against FPYC, members of FPYC's board, and FPYC's dockmaster Randy Simon ("Simon"). Moore's complaint alleged that FPYC fined him excessively, FPYC and Simon engaged in unfair and deceptive trade practices, Simon abused legal process, and FPYC and its board were negligent in hiring Simon as dockmaster. Moore sought compensatory, treble, and punitive damages. FPYC filed a motion to dismiss for failure to join all necessary parties

pursuant to North Carolina Rules of Civil Procedure, Rule 12(b)(7). On 11 October 2010, this motion was granted by Judge W. Allen Cobb, Jr., dismissing Moore's complaint without prejudice.

On 4 March 2011, FPYC's board conducted a hearing regarding Moore's violations of FPYC's rules. In a final decision issued 22 April 2011, FPYC's board found that Moore had damaged water faucets on one of FPYC's docks; damaged the bathrooms in the clubhouse; allowed his dog to run without a leash on FPYC property; committed acts of harassment and intimidation against FPYC board members, residents, and guests; impermissibly moved a concrete parking bumper; and did not follow FPYC's rules when parking and storing a boat trailer. Moore was assessed a fine of $496.80 which was paid.

On 5 November 2011, FPYC's board conducted a second hearing regarding Moore's continued violation of FPYC rules. In the second hearing, the FPYC board found that Moore continued to violate association rules despite having agreed to comply with the board's decision of 22 April. Specifically, the FPYC board found that Moore violated FPYC's rules regarding threatening and/or offensive conduct, signage, property damage, dockage, parking, bike riding on docks, and keeping his dog on a leash.

Moore was assessed total fines of $550.00 and his FPYC membership rights were suspended for a period of sixty days.

On 17 January 2012, FPYC filed an action against Moore (hereafter "defendant") seeking a temporary restraining order, a preliminary injunction and a permanent injunction restraining him from continuing to violate FPYC's rules.[1] On 25 January, defendant filed an answer and counterclaims for unfair and deceptive trade practices; abuse of process; negligent hiring, retention, and supervision of dockmaster; negligent infliction of emotional distress; intentional infliction of emotional distress; and punitive damages. On 26 March 2012, FPYC filed a response to defendant's counterclaims, including a motion to dismiss for failure to join all necessary parties pursuant to N.C. R. Civ. P. 12(b)(7), as well as for *res judicata* and collateral estoppel. Defendant filed a motion to dismiss FPYC's claims pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7), and 12(c) on 25 July 2012.

---

[1] FPYC alleged that defendant violated FPYC's rules by spraying ketchup on the fence and home of the FPYC board president, shining a spotlight into the home of the board president, repeatedly using profane language towards members of the FPYC board, and sending threatening messages to board members. Other allegations of rule violations against defendant included defendant riding his bike along the marina's docks, defendant's dog running loose without a leash, and defendant defacing the FPYC clubhouse bathrooms with feces.

On 18 September 2012, Judge Cobb granted FPYC's motion and dismissed defendant's counterclaim with prejudice based on defendant's failure to join necessary parties. That same day, Judge Cobb entered a second order denying defendant's motions to dismiss FPYC's complaint pursuant to N.C. R. Civ. P. 12(b)(1), (6), (7), and 12(c), and for FPYC's lack of standing to sue on behalf of its members.

On 28 September 2012, defendant filed a new motion to dismiss pursuant to N.C. R. Civ. P. 12(b)(6) on grounds that FPYC already had an adequate remedy at law and thus, an injunction was unnecessary. On 5 October 2012, FPYC filed motions for summary judgment and for permanent injunction against defendant. On 15 October 2012, Judge Cobb heard FPYC's motions for summary judgment and permanent injunction and defendant's second motion to dismiss. On 18 October 2012, Judge Cobb issued an order granting FPYC's motions for summary judgment and permanent injunction and denying defendant's motion to dismiss. Defendant appeals.

_____

On appeal, defendant raises the following issues: whether the trial court erred (I) in its first 18 September 2012 order denying defendant's motion to dismiss; (II) in its second 18

September 2012 order dismissing defendant's counterclaim; (III) in its 18 October 2012 order denying defendant's motion to dismiss and granting FPYC's motions for summary judgment and permanent injunction; (IV) in its 18 October 2012 order granting FPYC's motions for summary judgment and permanent injunction where the permanent injunction applied to undefined persons and places; and (V) in its 18 October 2012 order granting FPYC's motion for summary judgment.

*I.*

Defendant argues the trial court erred in its 18 September 2012 order denying defendant's motion to dismiss pursuant to N.C. R. Civ. P. 12(b)(1), (b)(6) and (b)(7).  We disagree.

A motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is reviewed by this Court *de novo*.  *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001).  "For a motion to dismiss based upon Rule 12(b)(6), the standard of review is whether, construing the complaint liberally, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory."  *Strates Shows, Inc. v. Amusements of Am., Inc.*, 184 N.C. App. 455, 460, 646 S.E.2d 418, 423 (2007) (citation and quotation omitted).

In its first 18 September 2012 order, the trial court observed that defendant filed the following motions:

1. A Motion to Dismiss [FPYC]'s Complaint filed pursuant to Rules 12(b)(1) and 12(c) of the North Carolina Rules of Civil Procedure because [FPYC] . . . lacked standing to bring the claim(s) set forth in its Complaint because (a) the FPYC does not have standing to seek permanent injunctions on behalf of an individual, (b) even if the FPYC, as a non-profit corporation, has standing to bring an action as set forth and described in its Complaint, each and every member on whose behalf such relief is sought must also have standing to seek the same relief and that those individual members had previously given up their rights to seek the remedies set forth in the Complaint, and (c) the relief sought by [FPYC] in its Complaint has been, at least in part, rendered moot.

2. A Motion to Dismiss [FPYC]'s Complaint filed pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure because the basis that [FPYC] (a) did not affirmatively plead conditions precedent to the filing of its Complaint and (b) [FPYC] lacked standing to bring the claims set forth in its Complaint.

3. A Motion to Dismiss [FPYC]'s Complaint filed pursuant to Rule 12(b)(7) of the North Carolina Rules of Civil Procedure because [FPYC] failed to join necessary and indispensable parties to the action.

The trial court then held "that Defendant's Motions to Dismiss the remaining claims set forth in [FPYC's] Complaint filed

pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7) and 12(c) are hereby DENIED." Defendant contends that the trial court erred in denying his motions to dismiss under Rules 12(b)(1) and (b)(6) because FPYC lacked standing to represent its members. "A lack of standing may be challenged by motion to dismiss for failure to state a claim upon which relief may be granted." *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337, 525 S.E.2d 441, 445 (2000) (citation omitted). "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus. v. Tolson*, 155 N.C. App. 624, 626–27, 574 S.E.2d 55, 57 (2002) (citations omitted). To have standing, a party must be a "real party in interest." *Energy Investors Fund*, 351 N.C. at 337, 525 S.E.2d at 445.

Defendant specifically argues that FPYC lacked standing because fourteen members of FPYC dismissed their no-contact claims against him with prejudice. An association like FPYC has representational standing for its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit." *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 555 (1990) (citation omitted). "The clear language of *River Birch* . . . does not require a threat of immediate injury to each and every individual member of the association in order for the association to have standing." *State Emps. Ass'n of N.C. v. State*, 154 N.C. App. 207, 219, 573 S.E.2d 525, 533 (2002) (Tyson, J., dissenting), *overruled on other grounds by State Emps. Ass'n of N.C. v. State*, 357 N.C. 239, 580 S.E.2d 693 (2003).

Here, defendant contends that FPYC lacked representational standing because by voluntarily dismissing their no-contact orders with prejudice, fourteen of FPYC's members forfeited their individual standing because they no longer suffered from an immediate harm caused by defendant. Defendant's argument lacks merit for, as previously discussed, FPYC had standing as its own corporate entity to bring suit, regardless of the claims brought by its fourteen individual members. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("An association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."). Furthermore, our Supreme Court

has held that not every member of an association must have suffered an immediate harm in order for the association to have standing to seek relief from such harm. *See River Birch*, 326 N.C. at 130, 388 S.E.2d at 555. Accordingly, the trial court did not err in its first 18 September 2012 order denying defendant's motion to dismiss pursuant to N.C. R. Civ. P. 12(b)(1) and (b)(6) for FPYC's lack of representational standing.

Defendant further argues that FPYC lacked standing because the dismissal with prejudice of fourteen no-contact orders by FPYC members against him served as *res judicata* to bar any claims by FPYC against him. On 13 January 2012, fourteen individual members of FPYC, including FPYC's board of directors and their respective spouses as well as FPYC's dockmaster and his wife, filed no-contact orders for stalking or nonconsensual sexual conduct against defendant. These no-contact complaints stated that:

> Defendant has repeatedly tormented, terrorized, or terrified the Plaintiff, a member of the Board of Directors ("Board") of [FPYC] or a spouse thereof, with the intent of placing the Plaintiff in reasonable fear for the Plaintiff's safety or the safety of the Plaintiff's immediate family or close personal associates by engaging in hostile, threatening behavior directed toward the Board, FPYC's

Dockmaster, and/or the spouses of the same. By way of example and not limitation, Defendant has (i) trespassed upon the land of . . . the president of the Board, and sprayed a blood-like substance all over the fence, gate, and steps of his home (1/2/12); (ii) used a weapon or other dangerous instrument to slash the tires of the spouse of FPYC's Dockmaster (12/31/11); (iii) threatened physical violence and/or bodily injury against FPYC's Dockmaster (10/18/11); and, (iv) threatened to kill FPYC's Dockmaster (7/10/10). There are many more examples. All of Defendant's conduct, regardless of to whom it was immediately directed, was intended to place and did place the Board's members and their spouses in reasonable fear for their safety and/or the safety of their family and/or close personal associates, as it was in apparent retaliation for the Board's censuring and fining Defendant for his repeated violations of the Rules and Regulations and Declarations of FPYC. Defendant's acts of aggression are escalating, and, given Defendant's frequent apparent intoxication and/or inability to control himself, Plaintiff fears for the Plaintiff's safety and the safety of the Plaintiff's immediate family and close personal associates.

All fourteen no-contact orders were voluntarily dismissed with prejudice on 23 July 2012.

Meanwhile, on 17 January 2012, five days after fourteen FPYC members filed no-contact orders against defendant, FPYC filed as a corporation a complaint against defendant alleging that:

14. [Defendant], while a member of [FPYC],

has repeatedly violated various provisions of the Declaration, By-Laws, and/or Rules and Regulations of [FPYC].

15. [Defendant] has been notified of his potential violations of the Declaration, By-Laws, and/or Rules and Regulations of [FPYC] and has on two occasions in the past year had hearings before the Board of Directors of [FPYC] to review and consider those potential violations.

16. Most recently, the Board of Directors of [FPYC], in a decision dated 1 December 2011, determined [defendant] had violated the Declaration, By-Laws, and/or Rules and Regulations of [FPYC] through, *inter alia*, (a) his intimidating, threatening, harassing, profanity-laden, and nuisance-creating actions, and his disorderly conduct directed at the Board of Directors and [FPYC]'s Dockmaster, including but not limited to his offensive, verbal assault on [FPYC]'s Dockmaster which was captured on videotape on 18 October 2011; (b) his destruction of property by, on information and belief, urinating, defecating, and/or placing soiled toilet paper on signs hung by [FPYC] in the men's bathroom of the FPYC clubhouse; and, (c) continuing to violate [FPYC]'s Declaration, By-Laws, and/or Rules and Regulations.

17. Pursuant to the Board of Directors' hearing decision dated 1 December 2011 ("Hearing Decision"), [defendant] and his wife were assessed fines, and [defendant's] membership rights in [FPYC] were suspended for sixty (60) days beginning 4 December 2011 and ending 3 February 2012.

18. During the period of [defendant's] suspension of his membership rights in [FPYC], he has no right to access or use the

common areas of [FPYC].

19. Since 4 December 2011, [defendant] has repeatedly violated the terms of the suspension of his membership rights by, *inter alia*, (a) purposefully accessing the common areas by the docks and clubhouse of [FPYC]; (b) on information and belief, entering the parking lot of the clubhouse on 31 December 2011 and using a weapon or other dangerous instrument to slash the tires of the wife of [FPYC's] Dockmaster (she and her husband, the Dockmaster, both members of [FPYC]), which event was captured on videotape; and, (c) on 2 January 2012, accessing the common areas by the docks and smearing, placing, and applying a dark red substance, which had the appearance of blood but which turned out to be ketchup, on the fencing, gate and steps of the home of [FPYC's] President, with, on information and belief, the intent and purpose to further intimidate, threaten, stalk, annoy, harass and terrorize [FPYC's] President, the President's spouse, all of the other members of [FPYC's] Board of Directors and their respective spouses, and all other members of [FPYC], which event, too, was captured on videotape.

20. [Defendant's] past behavior and present violent outbursts are in retaliation against the Board of Directors for their enforcement of the Declaration, By-Laws, and/or Rules and Regulations of [FPYC].

21. [FPYC] fears for the safety of its Board of Directors, its Dockmaster, its other members, and its property due to the violent, unpredictable, and uncontrollable behavior of [defendant].

Defendant contends that because the allegations in the no-

contact orders differ from those in FPYC's complaint only to the extent that the no-contact orders were brought by individual members of FPYC while FPYC's complaint was brought by the corporation itself, *res judicata* should act as a bar against FPYC's complaint.

"Under the doctrine of res judicata or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. Biosignia*, *Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (citations omitted). "A dismissal with prejudice is an adjudication on the merits and has res judicata implications." *Caswell Realty Assocs., I, L.P. v. Andrews Co.*, 128 N.C. App. 716, 720, 496 S.E.2d 607, 610 (1998) (citations omitted).

FPYC's complaint was brought by FPYC acting as "a corporation organized and existing under the laws of the State of North Carolina doing business in New Hanover County, North Carolina." As such, FPYC was not the same party or privy to the fourteen individual members of FPYC who filed no-contact orders against defendant. *See Troy Lumber Co. v. Hunt*, 251 N.C. 624, 627, 112 S.E.2d 132, 135 (1960) (holding that although a person may be a shareholder or an officer of a corporation, that is not

sufficient to establish privity for purposes of *res judicata* between the shareholder or officer and the corporation).

Defendant further contends that FPYC is barred by *res judicata* under this Court's reasoning in *Caswell Realty*. In *Caswell Realty*, the plaintiff filed an initial lawsuit which was settled and dismissed with prejudice. The plaintiff then filed two additional lawsuits based upon the same allegations as alleged in the first lawsuit. The defendants moved for summary judgment, which was granted by the trial court. The trial court held that because the allegations and parties were the same in all three claims raised by the plaintiff, the second and third claims were barred by *res judicata*. *Caswell Realty*, 128 N.C. App. 716, 496 S.E.2d 607.

Here, as already discussed, the no-contact orders did not involve the same parties or privies as FPYC's complaint. As such, *Caswell Realty* is not applicable to the instant case. *See also Smoky Mountain Enters., Inc. v. Rose*, 283 N.C. 373, 196 S.E.2d 189 (1973) (*res judicata* barred a new action by a corporation's president against the defendant where the corporation's president had brought a prior action against the same defendant for the same relief); *Thompson v. Lassiter*, 246 N.C. 34, 97 S.E.2d 492 (1957) (holding that a person who is not

a party to an action can be bound by the adjudication of a litigated matter only when that person controls an action, individually or in cooperation with others).

## *II.*

Defendant next argues that the trial court erred in its second 18 September 2012 order dismissing defendant's counterclaim with prejudice pursuant to N.C. R. Civ. P. 12(b)(7). We disagree.

North Carolina General Statutes, section 1A-1, Rule 12(b)(7), holds that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim [or] counterclaim . . . may at the option of the pleader be made by motion [for] [f]ailure to join a necessary party." N.C. Gen. Stat. § 1A-1, Rule 12(b)(7) (2013).

> When faced with a motion under Rule 12(b)(7), the court will decide if the absent party should be joined as a party. If it decides in the affirmative, the court will order him brought into the action. However, if the absentee cannot be joined, the court must then determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him or to dismiss the action. . . . A dismissal under Rule 12(b)(7) is not considered to be on the merits and is without prejudice.

*Crosrol Carding Dev., Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 453–54, 183 S.E.2d 834, 838 (1971) (citation omitted).

On 12 August 2010, defendant filed a complaint against FPYC. On 11 October 2010, the trial court issued an order dismissing defendant's complaint without prejudice pursuant to N.C. R. Civ. P. 12(b)(7) for failure to join necessary parties. Defendant did not appeal from this order.

On 25 January 2012, defendant filed a counterclaim against FPYC; on 29 March 2012, FPYC moved to dismiss the counterclaim pursuant to Rule 12(b)(7) for failure join necessary parties. A hearing was held on 9 August 2012, and in an order dated 18 September 2012, the trial court granted FPYC's motion to dismiss dismissing defendant's counterclaims with prejudice. In its order, the trial court noted that:

> 5. The allegations of the Counterclaim filed by [defendant] in this action are based upon the same factual allegations that formed the basis of the Complaint filed by [defendant] in Civil Action Number 10 CVS 3796.[2] In addition, all of the claims that are now set forth in [defendant's] Counterclaim were included as part of the claims set forth in the Complaint [defendant] filed in Civil Action Number 10 CVS 3796. The claims as set forth in [defendant's] Counterclaim are a restatement of the same claims he asserted against FPYC in his Complaint. In addition, [defendant] makes the same request for damages against the FPYC in his Counterclaim that he made in his "original" Complaint.

---

[2] Defendant's complaint, filed 12 August 2010, was docketed under 10 CVS 3796. This complaint was dismissed by the trial court on 11 October 2010 without prejudice.

The trial court concluded that:

> BASED UPON THE FOREGOING, and as with the Motion to Dismiss filed by the FPYC to the Complaint filed by [defendant] in Civil Action Number 10 CVS 3796, this Court determines as a matter of law that Plaintiff FPYC's Motion to Dismiss [defendant's] Counterclaim for failure to join necessary and indispensable parties should be and is hereby ALLOWED.

Here, defendant's first complaint was dismissed without prejudice by the trial court under Rule 12(b)(7) for failure to join necessary parties. Under Rule 41(b),

> [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim therein against him. . . . *Unless the court in its order for dismissal otherwise specifies, a dismissal under this section . . . operates as an adjudication upon the merits.* If the court specifies that the dismissal of an action commenced within the time prescribed therefor, or any claim therein, is without prejudice, it may also specify in its order that a new action based on the same claim may be commenced within one year or less after such dismissal.

N.C. Gen. Stat. § 1A-1, Rule 41(b) (2013) (emphasis added).

In its 11 October 2010 order dismissing defendant's complaint, the trial court did not specify a period of time for defendant to refile his complaint; as such, defendant had a statutory period of one year from the date of that order to

refile his complaint. When defendant failed to refile his complaint or appeal the trial court's order of 11 October 2010, defendant's counterclaim filed 25 January 2012 was properly dismissed. *See id.; see also id.* §1A-1, Rule 41(c) ("The provisions of this rule apply to the dismissal of any counterclaim, crossclaim, or third-party claim.").

### *III. & IV.*

In his third and fourth arguments on appeal, defendant contends that the trial court erred in its 18 October 2012 order denying defendant's motion to dismiss and granting FPYC's motions for summary judgment and permanent injunction where there were adequate remedies at law and the injunction was overly broad.

"A mandatory injunction is the proper remedy to enforce a restrictive covenant [] and to restore the status quo." *Wrightsville Winds Townhouses Homeowners' Ass'n. v. Miller*, 100 N.C. App. 531, 536, 397 S.E.2d 345, 347 (1990) (citations omitted). "Whether injunctive relief will be granted to restrain the violation of such restrictions is a matter within the sound discretion of the trial court . . . and the appellate court will not interfere unless such discretion is manifestly abused." *Buie v. High Point Assocs. Ltd. P'ship*, 119 N.C. App.

155, 161, 458 S.E.2d 212, 216 (1995) (citation omitted).

North Carolina Rules of Civil Procedure, Rule 65 requires that "[e]very order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained." N.C. Gen. Stat. § 1A-1, Rule 65(d) (2013). This Court has characterized the specificity inquiry to be conducted under Rule 65 as a determination of "whether the party enjoined can know from the language of the order itself, and without having to resort to other documents, exactly what the court is ordering it to do." *Auto. Dealer Res., Inc. v. Occidental Life Ins. Co.*, 15 N.C. App. 634, 642, 190 S.E.2d 729, 734 (1972).

Defendant argues that the trial court erred in granting FPYC's motion for permanent injunction because FPYC had an adequate remedy at law. Specifically, defendant contends that because individual members of FPYC could seek no-contact orders against him, FPYC had adequate remedies at law. As already discussed in *Issue I*, FPYC had standing to pursue a claim against defendant, independent of any claims FPYC's members could bring against defendant. Moreover, as a corporate entity FPYC had representational standing to bring a claim against

defendant on behalf of FPYC's full membership. *See Warth*, 422 U.S. at 511; *Troy Lumber*, 251 N.C. at 627, 112 S.E.2d at 135.

Here, FPYC's complaint indicated that defendant continued to violate FPYC's rules and regulations repeatedly, even after defendant agreed to no-contact orders issued for fourteen individual members of FPYC:

> 23. Based upon the allegations contained in this Verified Complaint, [FPYC] is entitled to an adjudication that [defendant] has violated the Declaration, By-Laws, and/or Rules and Regulations of the [FPYC]; has violated [FPYC]'s suspension of his membership rights; and, should be permanently enjoined from further violations of [FPYC]'s 1 December 2011 Hearing Decision.
>
> 24. [FPYC] has demonstrated a likelihood of success on the merits of this action against [defendant] for the issuance of a temporary restraining order and preliminary injunction against [defendant] during the pendency of this action from taking any action to violate the Declaration, By-Laws, Rules and Regulations, and decisions of the Board of Directors and to have no contact with any of [FPYC]'s Board members and their spouses except through his legal counsel during the pendency of this Court's temporary, preliminary and permanent injunction against him and all such terms and conditions as the Court may place on [defendant] to control his menacing, offensive and abusive behavior.
>
> 25. Further, based upon the allegations of this Verified Complaint, [FPYC] has demonstrated it will sustain irreparable

damage, namely bodily injury or death of its Board of Directors, Dockmaster, or other members and/or property damage for which no reasonable redress is afforded by law and to which [FPYC] in equity and good conscience should not be required to submit.

26. For the foregoing reasons, [FPYC] moves the Court for a permanent injunction against [defendant], restraining him from taking any action to violate his suspension and other provisions contained in [FPYC]'s 1 December 2011 Hearing Decision, including a permanent order enjoining [defendant] from engaging in any further menacing, offensive, threatening and abusive conduct towards [FPYC]'s Board members, their respective spouses, the Dockmaster and his spouse, employees and other representatives of [FPYC], and all other members of [FPYC].

In its 15 October 2012 order, the trial court held that:

[b]y virtue of this Order, and for so long as [defendant] remains and/or is a member in [FPYC], [defendant] (including those acting through [defendant]) shall be and is hereby PERMANENTLY RESTRAINED AND ENJOINED from engaging in the same or substantially similar violative conduct, behavior and actions as described and set forth in [FPYC]'s Hearing Decisions of April and December 2011 . . . .

The trial court then listed seventeen "prohibited actions" which mirrored defendant's alleged violations stated in FPYC's complaint. As the trial court made findings of fact in the 18 September and 15 October 2012 orders regarding defendant's behavior and conduct towards FPYC and its members and concluded

that defendant's behavior and conduct was violative of FPYC's rules and regulations, the trial court acted within its sound discretion in granting FPYC's motion for summary judgment and a permanent injunction against defendant.

Defendant also contends that the 18 October 2012 order is overly broad because the language of the order's "prohibitive actions" extends to persons, locations, and dates that are currently unknown to defendant. Specifically, defendant contends that he "has absolutely no discernible standard as to the persons, places and times to which the restraints apply." Defendant further argues that the language of the order is overly broad because FPYC failed to present evidence that defendant had issues with any members of FPYC other than the FPYC board president and dockmaster.

Defendant's only citations of authority for this argument concern the proposed standard of review. Defendant urges this Court to review this issue *de novo*, to "review and weigh the evidence and find facts for ourselves." We decline defendant's request and apply the standard of review we set out earlier in this opinion: "[w]hether injunctive relief will be granted to restrain the violation of such restrictions is a matter within the sound discretion of the trial court . . . and the appellate

court will not interfere unless such discretion is manifestly abused." *Buie*, 119 N.C. App. at 161, 458 S.E.2d at 216.

In its order granting a permanent injunction against defendant, the trial court noted that "[defendant] shall be and is hereby PERMANENTLY RESTRAINED AND ENJOINED from engaging in the same or substantially similar violative conduct, behavior and actions as described and set forth in [FPYC]'s Hearing Decisions of April and December 2011, both of which are . . . fully incorporated herein by reference." FPYC's motion to the trial court specifically requested "a permanent injunction against Defendant restraining and precluding him from engaging in recurring and similar violations of [FPYC]'s rules, regulations, restrictive covenants, bylaws and hearing decisions." The trial court's order stated that "Defendant's Prohibited Actions shall include, without limitation, the following:"

> (1) screaming profanities at, towards, or in the general direction of any [FPYC] member, their family members or guests, [FPYC]'s Board of Director members ("BOD"), and/or [FPYC]'s employees and independent contractors whether in public, in private, in person, and/or through the telephone or voicemail;

> (2) trespassing and/or entering upon the personal property or real property of [FPYC] members, their family members or guests,

[FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(3) having a violent outburst of any kind whether verbal, physical, or insinuative toward [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(4) "flipping off" or "giving the finger to" [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(5) shining bright lights (including flashlights and/or high-intensity spotlights) into or onto the home or property of [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(6) driving any vehicle toward, in the direction of, or in such a way or in such proximity to [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors that it puts the person in fear of his/her personal safety and/or blocks the person's right of way;

(7) "cussing out" any [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors in public, through email, through voicemail, through internet postings, text message, or other form of written or oral communication;

(8) calling any [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors an "a******," "dickhead," "pervert," or other derogatory name in

public or in any email, text message, voicemail, telephone call or other interaction with any [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(9) threatening any kind of violence, retribution, or "pay-back" toward [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(10) taking any violent or destructive action toward [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors and/or toward any such person's personal or real property;

(11) destroying, vandalizing, defacing, marking, or damaging (including by urinating on, spraying ketchup on, slashing the tires of, dropping electrical cords into the water, etc.) the real or personal property of [FPYC] and any [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(12) moving or removing any structure, barriers, signs, equipment or safety device found on or within the common areas or roadways of [FPYC];

(13) docking or causing to be docked any unauthorized boat or vessel in any slip or dock at [FPYC] or within the common area of [FPYC];

(14) "mooning," exposing himself, grabbing his crotch, sticking hoses between his legs, or making any profane and/or obscene gesture toward any [FPYC] members, their family

members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors, whether in person or on any kind or type of video or recording device located on a member's property;

(15) depositing dock carts, garbage or refuse, including but not limited to empty beer cans and broken chairs or the like, upon the property of any [FPYC] member or their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors;

(16) defacing, marking, vandalizing, or damaging the common areas of [FPYC]; and,

(17) engaging in any type or kind of intimidating, harassing, and terrorizing conduct toward any [FPYC] members, their family members or guests, [FPYC]'s BOD, and/or [FPYC]'s employees and independent contractors.

Defendant contends that the language of the permanent injunction is overly broad, arguing that "[u]nder the language of the Order as written, the restraints could apply: to persons whom [d]efendant does not even know . . . at locations which [defendant] does not know apply . . . and at times/circumstances that [defendant] does not know applies." We agree. While the specific types of behaviors which are prohibited are themselves fairly clear, categories 1, 3—4, 7—10, 14, and 17 ban behavior in vague or unspecified terms as to persons, times, and geographic scope. Although some of the prohibited behavioral

categories are limited to the geographic boundaries of FPYC, such as categories 12 ("moving or removing any structure, barriers, signs, equipment or safety device found on or within the common areas or roadways of [FPYC]"), 13 ("docking or causing to be docked any unauthorized boat or vessel in any slip or dock at [FPYC] or within the common area of [FPYC]"), and 16 ("defacing, marking, vandalizing, or damaging the common areas of [FPYC]"), the majority of the categories lack any specified boundaries, thus implying an unlimited applicability. *See Norfleet v. Baker*, 131 N.C. 99, 102, 42 S.E. 544, 545 (1902) ("Expressio unius est exclusio alterius. The presumption is that, having expressed some, they have expressed all, the conditions by which they intend to be bound under the instrument.").

This Court has previously upheld permanent injunctions where the prohibited behavior is clearly limited in terms of geographic scope. *See Matthieu v. Miller*, No. COA11-1287, 2012 N.C. App. LEXIS 886 (July 17, 2012) (finding that the trial court did not abuse its discretion in upholding injunctive relief where the injunction only affected one lot within a subdivision); *Schwartz v. Banbury Woods Homeowners Ass'n, Inc.*, 196 N.C. App. 584, 675 S.E.2d 382 (2009) (the trial court did

not abuse its discretion in granting injunctive relief where the injunction was specifically limited to prohibiting the homeowners from permanently storing their RV camper on their property). However, as this Court has not previously addressed the appropriateness of injunctive relief which is seemingly unlimited in scope, we find *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374 (Tex. App. 2009), to be enlightening.

In *Webb*, the defendants sued the plaintiffs for breach of their declaration of covenants and sought injunctive relief. The Texas Court of Appeals found the defendants' permanent injunction against the plaintiffs to be vague and overly broad as the injunction granted relief that went beyond the boundaries of the defendants' community. In finding that the trial court abused its discretion in issuing the permanent injunction, the Texas Court of Appeals noted that where the injunction's prohibited behaviors "requires reference to records outside the injunction to determine all 'members, wherever located[,]'" the trial court clearly abused its discretion because "the injunction grants relief beyond that supported by the evidence by extending outside the physical boundaries of the Glenbrook community." *Id*. at 386.

We find that the instant matter is akin to that of *Webb*, as

here, FPYC has obtained a permanent injunction against defendant that prohibits seventeen categories of behavior. Although some of these categories are clearly limited in terms of scope, the majority of these categories are not. Moreover, the injunction grants relief that extends beyond the boundaries of the FPYC community or immediately identifiable members of the FPYC community. We agree with defendant that the language used in categories 1, 3–4, 7–10, 14, and 17 is overly broad, as we find nothing that clearly limits these prohibited behaviors to any particular geographic area, durational period or immediately identifiable persons even though the evidence presented concerned only defendant's violations of FPYC's rules while within the FPYC community. As such, we must hold that the trial court abused its discretion in granting a permanent injunction with unlimited scope. Accordingly, we remand to the trial court solely to limit the scope of the injunction to actions directed at certain, identified individuals anywhere, such as the FPYC Board and community residents, or actions directed toward anyone in certain places, such as within the physical boundaries of the FPYC community.

Defendant further argues that the language of the order is overly broad because FPYC failed to present evidence that

defendant had issues with any members of FPYC other than the FPYC Board's president and dockmaster. Defendant's argument is without merit, as his behavior and conduct was directed towards and affected more members of FPYC than just FPYC's president and dockmaster. A review of the emails sent by defendant indicates that defendant contacted numerous members of FPYC. Defendant also verbally communicated, both in person and over the telephone, with various FPYC members and their families. As defendant's actions and behaviors affected both individual members of FPYC as well as the entire FPYC community, FPYC's motion for permanent injunction was meant to prevent defendant from committing further harm against FPYC, its members and their guests. *See id.* However, as discussed above, we must remand to the trial court to have the order's "prohibited actions" limited to certain, identifiable individuals, and to the physical boundaries of the FPYC community.

*V.*

Defendant's final argument on appeal is that the trial court erred in its 18 October 2012 order granting FPYC's motion for summary judgment where there were questions of fact, and therefore, the trial court should not have granted a permanent injunction. We disagree.

> Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law [pursuant to] N.C.G.S. § 1A-1, Rule 56(c) (20[13]). The trial court must consider the evidence in the light most favorable to the non-moving party.

*Crocker v. Roethling*, 363 N.C. 140, 142, 675 S.E.2d 625, 628 (2009) (citations omitted). This Court reviews a trial court's order granting or denying summary judgment *de novo*. *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006) (citation omitted).

In its 18 October 2012 order, the trial court noted that it reviewed all of the evidence presented by both parties, including the evidence defendant now claims was not properly considered, as well as the trial court's own record of previous litigation between defendant and FPYC. The trial court then determined that defendant continued to violate FPYC's rules and regulations, even after FPYC met with defendant to discuss the violations and after fourteen individual members of FPYC obtained no-contact orders against defendant. Defendant does not specifically contest these facts. He does not argue that they did not occur, nor does he contest that these actions

violate the restrictive covenants. He only argues that his conduct was justified by FPYC's own unclean hands, an argument we address below. Therefore, because the evidence showed there were no genuine issues of fact that defendant's behavior and conduct had continued unabated against FPYC, the trial court did not err in granting FPYC's motion for summary judgment as FPYC is entitled to judgment as a matter of law.

Defendant further argues that summary judgment was inappropriate because FPYC acted with unclean hands towards him. Specifically, defendant argues that FPYC deliberately sought to drive him out of FPYC's community by provoking and targeting him with excessive fines and, therefore, FPYC cannot seek injunctive relief.

> When equitable relief is sought, courts claim the power to grant, deny, limit, or shape that relief as a matter of discretion. This discretion is normally invoked by considering an equitable defense, such as unclean hands or laches, or by balancing equities, hardships, and the interests of the public and of third persons.

*Roberts v. Madison Cnty. Realtors Ass'n*, 344 N.C. 394, 399, 474 S.E.2d 783, 787 (1996) (citation omitted). Further,

> [o]ne who seeks equity must do equity. . . . The conduct of both parties must be weighed in the balance of equity, and the party claiming estoppel, no less than the party sought to be estopped, must have conformed

to strict standards of equity with regard to the matter at issue.

*Creech v. Melnik*, 347 N.C. 520, 529, 495 S.E.2d 907, 913 (1998) (citations omitted).

The issuance of such an injunction depends upon the equities of the parties and such balancing is clearly within the province of the trial court. Whether injunctive relief will be granted to restrain the violation of such restrictions is a matter within the sound discretion of the trial court . . . and the appellate court will not interfere unless such discretion is manifestly abused.

*Buie*, 119 N.C. App. at 161, 458 S.E.2d at 216 (citations and quotation omitted).

Although defendant presented evidence that FPYC's Board president and dockmaster acted inappropriately towards him, defendant's own behavior and conduct towards FPYC was equally inappropriate.[3] The trial court, in considering FPYC's request for injunctive relief, weighed and balanced the competing equities of both parties and concluded that defendant's conduct was egregious enough to warrant the issuance of a permanent

---

[3] Again we note FPYC's allegations that defendant violated FPYC's rules and retaliated by spraying ketchup on the fence and home of the FPYC board president, shining a spotlight into the home of the board president, repeatedly using profane language towards members of the FPYC board, and sending threatening messages to board members. Other allegations of rule violations against defendant included defendant riding his bike along the marina's docks, defendant's dog running loose without a leash, and defendant defacing the FPYC clubhouse bathrooms with feces.

injunction.  As the trial court acted within its discretion in balancing "the equities of the parties," the trial court did not err in granting a permanent injunction in favor of FPYC.  We affirm summary judgment but remand to the trial court to limit the scope of the permanent injunction.

Affirmed in part; remanded in part.

Judges McGEE and STROUD concur.