IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-901

No. COA22-230

Filed 29 December 2022

Gaston County, No. 18 CVS 3443

CAROLYN LOUISE GUNN TESTAMENTARY TRUST, by and through CYNTHIA M. ROWLEY, Trustee, Plaintiff,

v.

CAROLYN ELISE BUMGARDNER, and EUGENE TISELSKY, Defendants.

Appeal by defendants from order entered 27 October 2021 by Judge Carla Archie in Gaston County Superior Court. Heard in the Court of Appeals 7 September 2022.

*Whitaker & Hamer, PLLC, by Aaron C. Low, for plaintiff-appellee.*

*Villmer Caudill, PLLC, by Bo Caudill, for defendants-appellants.*

DIETZ, Judge.

¶ 1 Defendants Carolyn Elise Bumgardner and Eugene Tiselsky appeal the entry of partial summary judgment, and a corresponding permanent injunction, requiring them to remove a fence and other obstructions blocking an easement for ingress and egress across their property.

¶ 2 As explained below, we hold that the trial court properly entered partial summary judgment concerning the existence and scope of the easement, and we

affirm that portion of the court's order. We vacate the permanent injunction and remand for the trial court to conduct further proceedings as set forth below.

## Facts and Procedural History

¶ 3        The following recitation of facts represents Defendants' version of events, viewed in the light most favorable to them. *See Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

¶ 4        Along Summit Avenue in Mount Holly there are three homes as shown in the aerial photograph below:



¶ 5        Defendants Carolyn Elise Bumgardner and Eugene Tiselsky own the home at 123 Summit Avenue. Plaintiff Carolyn Louise Gunn Testamentary Trust owns the

cottage located at 129 Summit Avenue, behind a duplex home at 125 and 127 Summit Avenue. Carolyn Rucker (formerly Carolyn Louise Gunn), the beneficiary of the trust, lives in the cottage. Rucker has special needs.

¶ 6        In 1998, Leann Wheeler purchased the 123 Summit Avenue property now owned by Defendants from the Hilderbran family. At the time, Kenneth Hilderbran also owned the cottage at 129 Summit Avenue. As part of the sale, Wheeler granted Hilderbran an easement across her property for ingress and egress to the cottage at 129 Summit Avenue:

> NOW THEREFORE, Wheeler, while retaining absolute ownership of said property, for and in consideration of the premises, does hereby give and grant unto Hilderbran, his heirs and assigns a non-exclusive and perpetual easement for the purposes of ingress and egress to and from the aforesaid property of Hilderbran across the property of Wheeler, said easement being more particularly described as Exhibit B attached hereto.

¶ 7        Hilderbran later sold the cottage at 129 Summit Avenue to Plaintiff and Carolyn Rucker moved into the cottage.

¶ 8        Shortly after the sale of the cottage to Plaintiff, Barbara Gilbert approached Wheeler to discuss an issue involving Wheeler's dog. Gilbert was Carolyn Rucker's sister and the owner of the duplex in front of the cottage at 125 and 127 Summit Avenue. Gilbert was not a trustee of Plaintiff, the testamentary trust that owned the cottage for Rucker's benefit.

¶ 9        Gilbert explained to Wheeler that she was worried Wheeler's dog would have problems with Rucker's dog. Gilbert proposed installing a fence that would separate Wheeler's property from the cottage property.

¶ 10        Wheeler agreed and retained a surveyor to identify the property line on which to build the fence. The survey revealed that "when the properties had been split, they had not set the property line well and it ran through the corner of the cottage." As a result, Wheeler agreed to sell a small portion of property to Plaintiff so that the cottage was entirely on Plaintiff's property and the fence could be built along the new property line separating Wheeler's property from the cottage.

¶ 11        In an affidavit, Wheeler testified that, at the time she put up the fence between the properties, Barbara Gilbert promised Wheeler that she would "redo the duplex property"—meaning the 125 and 127 Summit Avenue property in front of the cottage that Gilbert currently owned—"and put the easement access on it instead of 123 Summit" because the easement was "for her sister."

¶ 12        During the time that Wheeler owned the property at 123 Summit Avenue, Plaintiff did not use the easement across the property, which was obstructed by the fence. At one point, Wheeler saw that someone "posted a house sign at the end of the duplex driveway to direct the pizza delivery and EMT's" to use the duplex driveway to access the cottage or deliver items to Carolyn Rucker.

¶ 13        Wheeler further testified that when she later sold her property to a new owner,

she remembered Barbara Gilbert's promise to "redo" the easement and place it on the duplex property and realized that she "never followed up on that promise because the easement was still on" her property. Wheeler told the new owner "to reach out to resolve the issue."

¶ 14 The new owner, Donna Skipper, testified in an affidavit that when she bought the property, she knew it was subject to an easement and that "Leann Wheeler informed me that the fence obstructing a portion of the Easement which runs between 123 Summit Avenue and 129 Summit Avenue may need to be moved and offered to have it removed before closing." Skipper also testified that she talked to Plaintiff (through the then-trustee of the trust) and "understood" that if Carolyn Rucker "ever needed us to move the fence to let vehicles access 129 Summit Avenue, then I would be willing to do so." Skipper later sold the property to Defendants and testified that, while conducting a "walkthrough" of the property with Defendants, she showed them "where the Easement was located and explained to them that the Easement was for vehicle access to 129 Summit Avenue."

¶ 15 After Defendants bought the property, Carolyn Rucker used the easement from time to time, either by walking along the easement to access the cottage, or by inviting relatives to drive onto the easement to pick her up when she needed transportation. This led to a dispute over the existence and scope of the easement.

¶ 16 In 2017, Plaintiff filed this action, alleging that Defendants "erected a fence,

trees, and shrubbery" that prevented the use and enjoyment of the easement on the property. Plaintiff sought a permanent injunction compelling removal of "the barriers of a fence, trees, and shrubbery" as well as monetary damages.

¶ 17 Initially, on cross-motions for partial summary judgment, the trial court entered partial summary judgment in favor of Plaintiff, stating that Plaintiff's motion "is allowed with respect to the plaintiff's first cause of action for injunctive relief and the plaintiff is entitled to judgment as a matter of law with respect to this claim." Defendants appealed and this Court dismissed the appeal, holding that the trial court's partial summary judgment order did not contain sufficient findings to constitute a permanent injunction. *Carolyn Louise Gunn Testamentary Tr. v. Bumgardner*, 276 N.C. App. 277, 2021-NCCOA-90.

¶ 18 On remand, Plaintiff filed a new motion for summary judgment and a motion for clarification of the trial court's earlier order. After a hearing, the trial court denied Plaintiff's motion for clarification but again granted partial summary judgment in favor of Plaintiff in a new order with more details of the scope of the resulting permanent injunction. The order stated:

> 3. That the Plaintiff's Motion for Summary Judgment as to the First Cause of Action for Injunctive Relief is GRANTED as follows:
>
> a. The Court hereby issues a permanent injunction that prohibits the Defendants from blocking ingress and egress to the easement by the Plaintiff's beneficiary or any of her

invitees;

b. The Court hereby issues a permanent injunction requiring Defendants to remove any trees, shrubs, or fencing that are prohibiting or interfering with ingress or egress of the easement by vehicles within 60 days from the date of hearing, which is by December 10, 2021. Defendants do not have to remove any property out of the easement over which they have no control, including the telephone pole that may be on the easement.

Defendants timely appealed.

## Analysis

### I. Abandonment of the easement

Defendants first argue that the trial court erred by granting partial summary judgment, and entering the resulting permanent injunction, because there are genuine issues of material fact with respect to whether Plaintiff abandoned the easement.

An easement may be abandoned "by unequivocal acts showing a clear intention to abandon and terminate the easement." *Skvarla v. Park*, 62 N.C. App. 482, 486–87, 303 S.E.2d 354, 357 (1983). "The essential acts of abandonment are the intent to abandon and the unequivocal external act by the owner of the dominant tenement by which the intention is carried to effect." *Id.* Importantly, the "lapse of time in asserting one's claim to an easement, unaccompanied by acts and conduct inconsistent with one's rights, does not constitute waiver or abandonment of the

easement." *Id.* Particularly relevant to this case, we held in *Skvarla* that a "fence, because it was erected by the owner of the servient tenement, was not evidence of abandonment" even though the fence had existed for "a long time," during which the dominant estate could not use the easement. *Id.*

¶ 21 Here, viewing all the evidence in the light most favorable to Defendants, there is no forecast of trial evidence that creates any genuine issues of material fact concerning abandonment. The undisputed evidence in the affidavits establishes that Leann Wheeler, the owner of the servient estate, constructed the fence across the easement. Wheeler, in her affidavit submitted by Defendants, acknowledges that she constructed the fence to address a potential issue between Wheeler's dog and Rucker's dog.

¶ 22 Wheeler communicated with Barbara Gilbert, Rucker's sister, about the fence and Gilbert "promised" that, at some point in the future, she would "redo" the easement by moving it onto the duplex property that Gilbert owned. But there is no evidence in the record that Gilbert—who was not a trustee of Plaintiff—had any authority to bind the trust. Thus, Gilbert's statements are not evidence of any "unequivocal acts showing a clear intention to abandon and terminate the easement" by the easement holder. *Id.* Moreover, Wheeler's affidavit indicates that Gilbert chose not to move the easement. When Wheeler sold the 123 Summit property, she later "realized that I had never followed up on that promise because the easement was still

on 123 Summit."

¶ 23    Finally, although Defendants have presented affidavit testimony establishing that Plaintiff and its predecessors in title rarely—and for many years never—used the easement to access the property, this "lapse of time in asserting one's claim to an easement" cannot create an issue of fact concerning abandonment unless accompanied by unequivocal acts and conduct demonstrating the intent to terminate the easement. *Id.* At most, Defendants have shown that Plaintiff was content not to use the easement for many years and instead access the property through permissive use of the duplex property. That fact, standing alone, is insufficient to meet the criteria for abandonment. *Id.* Accordingly, the trial court did not err by granting partial summary judgment on the issue of abandonment.

## II.    Scope of the easement

¶ 24    Defendants next challenge the trial court's grant of partial summary judgment on the scope of the easement. Defendants contend that, although the easement provides a right of ingress and egress it "does not clarify the manner of access permitted (e.g., whether such access includes vehicles or commercial vehicles or is limited to pedestrian access to and from the nearest public street)."

¶ 25    The scope of an express easement "is controlled by the terms of the conveyance if the conveyance is precise as to this issue." *Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786–87 (1995). Here, the easement provides "a non-exclusive

and perpetual easement for purposes of ingress and egress to and from" the cottage property at 129 Summit Avenue. This Court has observed that the "term ingress/egress" is not ambiguous. *Sauls v. Barbour*, 273 N.C. App. 325, 335, 848 S.E.2d 292, 300 (2020). "Ingress and egress" means the "right to use land to enter and leave another's property." *Ingress-and-Egress Easement, Black's Law Dictionary* (11th ed. 2019).

¶ 26 As a result, this language unambiguously permits use of the easement by any common means of transportation that can travel along the easement, including both pedestrian and vehicle use. This is further supported by the width of the easement, which Defendants acknowledge is approximately 18 feet. This Court has recognized that an easement of this size reflects an intent to be used for vehicles and not solely by pedestrians. *Benson v. Prevost*, 277 N.C. App. 405, 2021-NCCOA-208, ¶ 19.

¶ 27 Defendants point to a number of extrinsic factors—for example, that the easement terminates at a location on the cottage property that would "make it difficult, if not impossible, for vehicles to park on or maneuver over the easement without coming onto Defendants' unencumbered property." But that does not render the easement's scope ambiguous. If Plaintiff or its invitees cross onto Defendants' unencumbered property while using the easement, that gives rise to a separate property issue. Similarly, Defendants argue that there is now a telephone pole, a roadside curb, and other obstructions that make it impractical to use vehicles on the

easement. Again, this does not render the easement language ambiguous, which is a question that we address solely by reference to the language of the conveyance. *Swaim*, 120 N.C. App. at 864, 463 S.E.2d at 786–87.

¶ 28    We therefore hold that the trial court properly entered partial summary judgment on the issue of scope of the easement.

### III.    Entry of permanent injunction

¶ 29    Finally, Defendants argue that the trial court erred by entering the permanent injunction. Specifically, Defendants contend that entry of a permanent injunction requires a balancing of relevant equities and, here, the trial court did not make findings concerning the key equitable questions such as the "value of the easement" and the "cost of compliance" with the injunction.

¶ 30    This Court's case law on this issue is wildly inconsistent. There is a line of cases dealing with traditional property encroachment that rejects any need to balance the equities and instead holds that, if an encroachment and continuing trespass are established, the law entitles the property owner to a permanent injunction to have the encroachment removed. *See, e.g.*, *Bishop v. Reinhold*, 66 N.C. App. 379, 384, 311 S.E.2d 298, 301 (1984); *Williams v. S. & S. Rentals, Inc.*, 82 N.C. App. 378, 384, 346 S.E.2d 665, 669 (1986); *Graham v. Deutsche Bank Nat. Tr. Co.*, 239 N.C. App. 301, 307, 768 S.E.2d 614, 618 (2015); *see also* Olivia Weeks, *The Law Is What It Is, But Is It Equitable: The Law of Encroachments Where the Innocent, Negligent, and Willful*

*Are Treated the Same*, 39 Camp. L. Rev. 287 (2017).

¶ 31        At the same time, there are cases dealing with removal of trees, fences, and even whole buildings that are in violation of a restrictive covenant. These cases, some from our Supreme Court, hold that the use of a permanent injunction is within the trial court's discretion and "depends upon the equities between the parties." *Ingle v. Stubbins*, 240 N.C. 382, 390, 82 S.E.2d 388, 395 (1954); *Crabtree v. Jones*, 112 N.C. App. 530, 534, 435 S.E.2d 823, 825 (1993); *Fed. Point Yacht Club Ass'n, Inc. v. Moore*, 233 N.C. App. 298, 318, 758 S.E.2d 1, 13 (2014). There is also an encroachment case from this Court, dealing with a fence constructed across a property line, in which the Court held that "it was within the trial court's discretion to consider whether the injunctive relief sought was an appropriate remedy." *Mathis v. Hoffman*, 212 N.C. App. 684, 687, 711 S.E.2d 825, 826 (2011).

¶ 32        Ultimately, harmonizing all of this inconsistent case law may be a task only our Supreme Court can accomplish. The best this Court can do is to announce a rule for cases like this one, involving obstruction of an easement, that stays consistent with as much of this case law as possible. Doing so, we arrive at two key principles: First, our case law permits a trial court, in its discretion, to enter a permanent injunction prohibiting a party from obstructing another party's easement. When doing so, the trial court is not *required* to balance the equities or consider the relative hardships to the parties. Second, and again in the trial court's discretion, the court

*may* consider the balance of the equities or the relative hardship of the parties in fashioning a permanent injunction if the court finds it appropriate to do so.

¶ 33   Having announced these two principles, we turn to the trial court's ruling in this case. After determining that Plaintiff was entitled to summary judgment, the trial court's order states that "Plaintiff is entitled to a permanent injunction that prohibits Defendants from blocking ingress and egress to the easement by the Plaintiff's beneficiary or any of her invitees" and that "Plaintiff is entitled to a permanent injunction requiring Defendants to remove any trees, shrubs, or fencing that are prohibiting or interfering with ingress or egress of the easement."

¶ 34   We cannot be sure from the trial court's language that the court applied the principles we announced here—that is, that the court understood it had discretion to balance the equities or consider the relative hardships of the parties but chose instead to simply order the immediate removal of the obstructions to the easement.

¶ 35   Because "balancing of equities is clearly within the province of the trial court," *Crabtree*, 112 N.C. App. at 534, 435 S.E.2d at 825, and because this Court has not previously considered how to harmonize our case law for this type of easement case, we vacate the permanent injunction and remand to ensure that the trial court has an opportunity to apply the rule set out today. On remand, before again entering a permanent injunction, the trial court may consider whether to balance the equities or assess the relative hardships of the parties in determining whether a permanent

injunction is appropriate and what the scope of that injunction should be.

## Conclusion

¶ 36     We affirm the trial court's entry of partial summary judgment but vacate the entry of the permanent injunction and remand for further proceedings.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges COLLINS and CARPENTER concur.