CAROLINA WATER SERV., INC. v. TOWN OF PINE KNOLL SHORES

[145 N.C. App. 686 (2001)]

CAROLINA WATER SERVICE, INC. OF NORTH CAROLINA, PLAINTIFF-APPELLANT, AND PETER EGGIMANN, INTERVENOR-APPELLANT v. THE TOWN OF PINE KNOLL SHORES, A NORTH CAROLINA MUNICIPAL CORPORATION, C. REESE MUSGRAVE, IN HIS OFFICIAL CAPACITY AS MAYOR OF PINE KNOLL SHORES; ROBERT F. GALLO, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF FINANCE AND ADMINISTRATION FOR PINE KNOLL SHORES, AND MARY I. KANYHA, EMILY WHITE, WADE LAMSON, AND TED GOTZINGER, IN THEIR OFFICIAL CAPACITIES AS COMMISSIONERS OF PINE KNOLL SHORES, DEFENDANT-APPELLEES, AND KENNETH V. BENSON, ALICE D. BENSON, CARL J. HEFFELFINGER, LOIS A. HEFFELFINGER, W. JACK MILLIS, JOSEPHINE K. MILLIS, ROBERT F. GALLO (IN HIS INDIVIDUAL CAPACITY), AND DOLORES P. GALLO, INTERVENOR-APPELLEES

No. COA00-1001

(Filed 21 August 2001)

**Cities and Towns— exclusive private water service—void as against public policy**

The trial court did not err by declaring unenforceable plaintiff's exclusive water service agreement for the Town of Pine Knoll Shores where the family who developed the tract that became the town entered into an exclusive agreement with plaintiff's predecessor in 1966; the agreement was recorded in the subdivision's covenants; the town has grown and plaintiff has expanded its facilities to serve the entire town; the Town decided to build its own municipal water system; plaintiff brought suit to enjoin the Town from establishing a municipal water system; and the Town counterclaimed to have the 1966 agreement declared unenforceable. The Legislature has the power to create public policy and has given broad, ultimate authority to municipalities to provide water to their citizens. The agreement is void as against public policy because it is exclusive, extends indefinitely into the future, and cannot be enforced without preventing the Town from exercising its statutory powers.

Appeal by plaintiffs from judgment entered 9 June 2000 by Judge Benjamin G. Alford in Carteret County Superior Court. Heard in the Court of Appeals 7 June 2001.

*Hunton and Williams, by Edward S. Finley, Jr., and Smith, Helms, Mulliss, and Moore, L.L.P., by James G. Exum, Jr., for plaintiff-appellant and intervenor-appellant.*

*Poyner and Spruill, L.L.P., by Nancy Bentson Essex, and Kirkman, Whitford, and Brady, P.A., by Neil B. Whitford, for defendant-appellees and intervenor-appellees.*

*Andrew L. Romanet, Jr. and John M. Phelps, II, for North Carolina League of Municipalities, amicus curiae.*

*William E. Grantmyre, for Carolinas Chapter of the National Association of Water Companies, amicus curiae.*

HUDSON, Judge.

Carolina Water Service filed this suit seeking to enjoin the Town of Pine Knoll Shores from establishing a municipal water system and to enforce exclusive water service provisions in its favor. The trial court declared unenforceable the exclusive water service provisions in favor of Carolina Water, denied an injunction against the Town, and permanently enjoined Carolina Water from using the provisions to interfere with the Town's right to build its own water system. We agree that the exclusive rights provisions contravene public policy which favors municipalities and which prohibits private monopolies and perpetuities. We affirm the order of the trial court.

Facts helpful to an understanding of this case are as follows: in 1966, members of the Roosevelt family began plans to develop a 379-acre tract of land (the Tract) in what is now part of Pine Knoll Shores in Carteret County, North Carolina. The Roosevelts entered into an agreement (the 1966 Agreement) with Southern Gulf, South Carolina Utilities Division, Inc. (Southern Gulf) giving Southern Gulf the exclusive right to construct and operate a central water facility to serve the Tract. By the terms of the agreement, all owners and occupants within the Tract were to purchase their water only from Southern Gulf and were prevented from allowing other water providers to construct water service facilities within the Tract. The 1966 Agreement described these promises as "covenant[s] running with the land," binding upon subsequent purchasers of land within the tract and benefitting future successors of Southern Gulf.

In the 1966 Agreement, the Roosevelts also promised to include the covenants in favor of Southern Gulf in the general subdivision restrictions. From 1967 until 1971, the Roosevelts developed the Tract and conveyed lots. As promised, the covenants were recorded in the subdivision's Declarations of Covenants and Restrictions (Declarations) which were filed with the Carteret County Register of Deeds. Conveyances to lot owners were made subject to the Declarations and the easements and restrictive covenants they created. In turn, Southern Gulf constructed water supply and distribution facilities to serve the subdivision.

Carolina Water Service (Carolina Water) acquired title to the water facilities in 1972, and the Town of Pine Knoll Shores (the Town) incorporated in 1973. In 1974, the Roosevelts executed a deed conveying the streets in Pine Knoll Shores to the Town, "subject to the easements heretofore granted for utilities." The Town now includes approximately 1,120 acres in addition to the 379 acre tract and is home to an estimated 2,000 water customers. Carolina Water has expanded its water facilities to serve the entire Pine Knoll Shores city limits.

In 1995, the Town informed Carolina Water that it wanted to build its own municipal water system. Carolina Water insisted that the exclusive rights provisions in the 1966 Agreement and the 1967-71 Declarations barred the Town from constructing a water system. On 20 September 1995, the Town filed a complaint seeking an order authorizing the Town to construct its own water system and to provide water service to its citizens. The trial court entered judgment for the Town, but this Court vacated that judgment on 6 January 1998, finding no actual controversy and no jurisdiction. *See Town of Pine Knoll Shores v. Carolina Water Service*, 128 N.C. App. 321, 494 S.E.2d 618 (1998).

The Town began construction of its own system in 1999 by laying approximately 2000 feet of pipe within the Tract. When the system is completed, the Town intends to offer water service to all residents and property owners within the Tract and to charge a $10 per month availability fee to all owners who choose to continue receiving service from Carolina Water.

In April 1999, Carolina Water brought suit to enjoin the Town from establishing a municipal water system within the Tract. In its counterclaim, the Town again sought to have the 1966 Agreement and 1967-71 Declarations declared unenforceable. In its judgment for the Town, the trial court concluded in pertinent part: (1) the exclusive rights provisions of the 1966 Agreement are contrary to public policy; (2) the description of the Tract in the 1966 Agreement is void for vagueness; and (3) the water service provisions are unlawful restraints of trade. Therefore, the trial court declared the exclusive rights provisions unenforceable, denied the injunction sought by Carolina Water, and permanently enjoined Carolina Water from using the provisions to interfere with the rights of the Town to construct a municipal water system. From the trial court's order, Carolina Water appeals.

CAROLINA WATER SERV., INC. v. TOWN OF PINE KNOLL SHORES

[145 N.C. App. 686 (2001)]

Carolina Water contends the trial court erred in concluding that the exclusive rights provisions "are contrary to public policy to the extent they purport to prevent the Town of Pine Knoll Shores or any other municipality from providing public water utility service to any property located within municipal limits." Carolina Water argues that any authority the Town has to construct a municipal water system neither supersedes valid restrictive covenants nor requires provision of duplicative services. Carolina Water insists that no statutory grounds exist to invalidate the provisions as a matter of public policy. Because the statutes allowing municipal water service do not address competition with private suppliers, Carolina Water maintains that public policy does not favor municipal systems. We disagree.

Our state legislature has the power to create public policy. *See Riegel v. Lyerly*, 265 N.C. 204, 209, 143 S.E.2d 65, 68 (1965). "[W]here the law-making power speaks on a particular subject over which it has power to legislate, public policy in such cases is what the law enacts." *Cauble v. Trexler*, 227 N.C. 307, 311, 42 S.E.2d 77, 80 (1947). An agreement which cannot be performed without violation of a statute is illegal and void. *Id.*

North Carolina's legislature has given municipalities the authority to construct and operate their own water systems. *See* N.C.G.S. §§ 160A-311 and 160A-312 (1999). It has granted to all municipalities the power to fix and enforce rates and even to require land owners to connect to their water systems or else pay an availability fee. *See* N.C.G.S. §§ 160A-314 and 160A-317 (1999). In these provisions, the legislature made no exceptions for situations in which a private system exists or exclusive rights have purportedly been granted to a private supplier. *See* G.S. §§ 160A-311, 312, 314, and 317. Nor did it enact any statutory provisions which permit a municipality to permanently convey or contract away its statutory rights to provide water service. Unless and until the legislature enacts such exceptions, the authority of municipalities to construct and operate their own water systems remains absolute.

Numerous United States Supreme Court cases, as well as cases decided in North Carolina, pronounce public policy in favor of broad discretion for municipalities regarding the construction and operation of their own utilities. *See, e.g., Knoxville Water Co. v. Knoxville*, 200 U.S. 22, 50 L. Ed. 353 (1906) (holding that a city's covenant "not to grant [a water service franchise] to any other person or corporation" did not bar the city from establishing its own system); *Lumbee River Electric Corp. v. City of Fayetteville*, 309 N.C. 726, 309 S.E.2d

209 (1983) (holding that a municipality could provide electric service, even where the Utilities Commission had assigned that area to an electric cooperative, as long as service by the municipality was authorized by Chapter 160A); *Power Co. v. Elizabeth City*, 188 N.C. 278, 124 S.E. 611 (1924) (holding that a franchise from the Utilities Commission for a utility to operate in an area does not bar a municipality from operating a competing system). A compelling example is *Carolina Water Service v. Town of Atlantic Beach*, 121 N.C. App. 23, 464 S.E.2d 317 (1995), *disc. review denied*, 342 N.C. 894, 467 S.E.2d 901 (1996), in which Carolina Water sued the Town of Atlantic Beach when that town attempted to provide a water system that would duplicate Carolina Water's service to Atlantic Beach. Carolina Water argued that it had relied upon language in annexation ordinances to the effect that it had an exclusive right to provide water service within the annexed area. In affirming the trial court's order in favor of Atlantic Beach, this Court emphasized that "the Town has the authority under the public enterprise statute to construct and administer its *own* water system." *Id.* at 32, 464 S.E.2d at 323 (emphasis added). We conclude that these cases plainly reveal public policy in favor of municipalities' rights to construct and operate water systems, even when private systems are already in operation.

Additionally, monopolizing or attempting to monopolize trade or commerce in North Carolina is strictly prohibited. N.C.G.S. § 75-2.1 (1999) ("It is unlawful for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of trade or commerce in the State of North Carolina."); *see also* N.C. Constitution. art. I, § 34 ("Perpetuities and monopolies are contrary to the genius of a free state and shall not be allowed."). The attempt by the Roosevelts to give a private water supplier perpetual exclusive rights to serve an area violates this prohibition. In addition, under N.C.G.S. § 160A-322 (1999), cities can enter into contracts for the supply of water for a period of no more than forty years. We find it difficult to conceive how Southern Gulf and the Roosevelts, a group of private individuals, could be allowed to bind other citizens in their choice of a water provider forever, when a municipality cannot bind itself for more than forty years. The provisions of the 1966 Agreement and the 1967-71 Declarations that purport to give Carolina Water exclusive easements and exclusive rights to supply water to Pine Knoll Shores for an unlimited period of time cannot be enforced because they are in violation of our state's public policy against monopolies and perpetuities.

Our legislature has given broad, ultimate authority to municipalities to provide water to their citizens. Because the exclusive rights provisions in favor of Carolina Water cannot be enforced without preventing the Town from exercising its statutory powers regarding municipal water systems, and because they are exclusive and extend indefinitely into the future, the provisions are void as against public policy. Accordingly, we affirm the trial court's judgment declaring the exclusive water service provisions unenforceable, denying the permanent injunction sought by Carolina Water, and permanently enjoining Carolina Water from using the 1966 Agreement or the restrictive covenants to interfere with the Town's right to construct a municipal water system and supply water to its citizens.

Affirmed.

Judges HUNTER and SMITH concur.