NO. COA13-827

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

ELIZABETH R. BOTTS,
    Plaintiff,

    v.                                    Durham County
                                          No.  10 CVS 002576
MARK DAVID TIBBENS and ALICIA
TIBBENS,
    Defendants.


Appeal by defendant Mark Tibbens from Judgment entered 7 February 2013 by Judge Michael Rivers Morgan in Superior Court, Durham County, and from Order entered 9 March 2012 by Judge Paul G. Gessner in Superior Court, Durham County.  Heard in the Court of Appeals 9 January 2014.

> *Berman & Associates, by Gary K. Berman, for plaintiff-appellee.*
>
> *Cheshire & Parker, by D. Michael Parker, for defendant-appellant.*


STROUD, Judge.


Mark Tibbens ("defendant") appeals from a judgment entered on 7 February 2013 awarding Elizabeth Botts ("plaintiff") $32,331.72 for breach of contract and from an order granting plaintiff's motion for summary judgment on several affirmative

defenses raised by defendant. We affirm both the summary judgment order and the judgment.

## I. Background

In 2000, defendant purchased a 61.7 acre tract of land in Orange County. He later decided to subdivide the tract and, in 2007, signed an "Offer to Purchase and Contract" along with his wife, Alicia Tibbens, and plaintiff, wherein plaintiff offered to purchase 15 acres of land for $75,000. Plaintiff intended to build a home for herself on the land, but first needed a septic system installed. On 16 January 2008, the parties closed on their land purchase agreement and entered into a "Septic System Installation Agreement." Defendant's wife did not sign the installation agreement. In the installation agreement, defendant agreed to "install the septic system" for plaintiff's property and he agreed to "be responsible for all labor and job supervision associated with the installation." Plaintiff agreed to supply all necessary materials, rental equipment, and fuel for the project up to $10,000. Defendant agreed to be responsible for costs in excess of $10,000.

Defendant began the process of installing the septic system by consulting with others in the business and arranging for plaintiff's system to be designed and engineered by Summit

Consulting, PLLC. Summit began its portion of the work in March 2008 and finished around February 2010. In February 2010, defendant's attorney sent plaintiff a letter informing her that defendant was not a licensed contractor and that, as a result, he could not lawfully construct her septic system. It further asserted that the installation agreement was unenforceable and void. In response, plaintiff hired a septic company to install her system. The new company charged her $33,500 for its services.

On or about 9 March 2010, plaintiff filed a complaint against defendant and his wife alleging breach of contract and seeking damages for breach of the installation agreement. Plaintiff filed an amended complaint on 11 January 2011 adding a claim of unjust enrichment against Alicia Tibbens. Defendant answered, raising affirmative defenses of impossibility, illegality, and laches. After discovery, plaintiff moved for partial summary judgment on the affirmative defenses raised by defendant. The trial court granted plaintiff's motion by order entered 9 March 2012, finding no genuine issue of material fact and concluding that plaintiff was entitled to judgment as a matter of law on the affirmative defenses.

The case was tried on 17 and 18 December 2012 by the superior court judge sitting without a jury. The trial court entered its judgment, which contained findings of fact and conclusions of law, on 7 February 2013. It found that defendant had breached the installation agreement and that he owed plaintiff $32,331.72 in damages for the total cost of her septic system installation, $42,331.72, less the $10,000 she had agreed to spend on it. The trial court found that plaintiff had failed to prove that Alciia Tibbens was a party to the agreement and that she should also be liable for the breach. Defendant filed written notice of appeal to this Court on 5 March 2013.

## II. Impossibility and Illegality

Defendant first contends that the trial court erred in granting plaintiff's motion for summary judgment on the defenses of impossibility and illegality. We conclude that the trial court correctly granted summary judgment to plaintiff on these defenses because the installation agreement was neither illegal nor impossible to perform.

A. Standard of Review

> We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to

judgment as a matter of law. As part of that process, we view the evidence in the light most favorable to the nonmoving party.

*Cox v. Roach*, ___ N.C. App. ___, ___, 723 S.E.2d 340, 347 (2012) (citation omitted), *disc. rev. denied*, 366 N.C. 423, 736 S.E.2d 497 (2013).

B.    Analysis

Defendant argues that the trial court erred in granting plaintiff's motion for summary judgment on the defenses of illegality and impossibility because the contract was illegal and his performance impossible under N.C. Gen. Stat. § 90A-72, which requires that a person installing a septic system be a properly certified contractor.

> The court is to interpret a contract according to the intent of the parties to the contract, unless such intent is contrary to law. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

*Williams v. Habul*, ___ N.C. App. ___, ___, 724 S.E.2d 104, 111 (2012) (citations and quotation marks omitted). Defendant does not contend that the contract is ambiguous or that there were genuine issues of material fact. He simply disagrees with the

trial court's interpretation of the contract and its conclusion that the statute does not prevent defendant from performing.

"[A]n agreement which violates a constitutional statute or municipal ordinance is illegal and void." *Marriott Financial Services, Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 128, 217 S.E.2d 551, 555 (1975); *Carolina Water Service, Inc. of North Carolina v. Town of Pine Knoll Shores*, 145 N.C. App. 686, 689, 551 S.E.2d 558, 560 (2001) ("An agreement which cannot be performed without violation of a statute is illegal and void."), *disc. rev. denied*, 354 N.C. 360, 556 S.E.2d 298 (2001). Additionally, nonperformance may be excused for impossibility if the performing party's

> performance is rendered impossible by the law, provided the promisor is not at fault and has not assumed the risk of performing whether impossible or not. Moreover, in most cases it must be shown that the event was not reasonably foreseeable. Government actions . . . may be a basis for a finding of legal impossibility.

*UNCC Properties, Inc. v. Greene*, 111 N.C. App. 391, 397, 432 S.E.2d 699, 702 (1993), *cert. denied*, 335 N.C. 242, 439 S.E.2d 163 (1993).

Here, the only basis of illegality and impossibility asserted by defendant is statutory—that he was not allowed to construct a septic system for plaintiff because he was not a

certified on-site wastewater contractor. We agree that N.C. Gen. Stat. § 90A-72(a) requires that construction and installation of "an on-site wastewater system" be performed by or under the supervision of a properly certified contractor. *See* N.C. Gen. Stat. § 90A-72(a) (2009); N.C. Gen. Stat. § 90A-81(d)(1) (2009) (establishing that construction of an on-site wastewater system without the proper certificate is a Class 2 misdemeanor). But the parties' contract did not require defendant to install the septic system personally.

The contract provided, in relevant part:

> 1.  Tibbens will install the septic system for a residence on the property described in Exhibit A attached hereto. Tibbens will be responsible for all labor and job supervision associated with the installation.
>
> 2.  Botts will provide all materials and rental and fuel for any equipment necessary for the installation of the septic system in an amount not to exceed TEN THOUSAND AND 00/100 DOLLARS ($10,000.00).
>
> 3.  In the event that the expense of materials and rental and fuel for any equipment exceeds TEN THOUSAND AND 00/100 DOLLARS ($10,000.00), then and in said event, Tibbens shall be responsible for all materials and rental of and fuel for any equipment necessary for the installation of the septic system in excess of TEN THOUSAND AND 00/100 DOLLARS ($10,000.00).

Nothing in the plain language of this contract requires that defendant install the septic system *personally* or precludes him from employing others to effect the installation. Instead, the contract simply makes defendant responsible for the installation. Indeed, the language making Tibbens "responsible for all labor *and job supervision* associated with the installation" (emphasis added) strongly suggests that hiring others to assist in the performance of his contractual duties was permitted. Defendant could have sub-contracted to a properly licensed contractor to perform his contractual obligations. Moreover, nothing prevented him from seeking an appropriate contractor's license in the two years between the signing of the contract and the letter indicating his refusal to perform. That defendant miscalculated the costs of performing his contractual obligations does not make his performance impossible. *See* Restatement (Second) of Contracts, § 261, cmt. d (1981) ("A mere change in the degree of difficulty or expense due to such causes as increased wages, prices of raw materials, or costs of construction, unless well beyond the normal range, does not amount to impracticability since it is this sort of risk that a fixed-price contract is intended to cover. Furthermore, a party is expected to use reasonable efforts to surmount obstacles to

performance (see § 205), and a performance is impracticable only if it is so in spite of such efforts.")

We conclude that the contract does not require performance by someone precluded by statute from performing. Therefore, we hold the contract was not illegal and defendant's performance was not impossible. As a result, we affirm the trial court's order granting plaintiff's motion for summary judgment on these issues.

### III. Damages

Defendant next argues that the trial court erred in calculating plaintiff's damages by including the cost of engineering services which were not part of defendant's obligations under the contract.

> In a bench trial in which the superior court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable *de novo*.

*Hinnant v. Philips*, 184 N.C. App. 241, 245, 645 S.E.2d 867, 870 (2007) (citation and quotation marks omitted).

> Damages are allowed for breach of contract as may reasonably be supposed to have been

> in the contemplation of the parties when the contract was made or which will compensate the injured party for the loss which fulfillment of the contract could have prevented or the breach of it has entailed. The party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty.

*J.T. Russell and Sons, Inc. v. Silver Birch Pond L.L.C.*, ___ N.C. App. ___, ___, 721 S.E.2d 699, 704 (2011) (citations, quotation marks, and brackets omitted).

"While the amount of damages is ordinarily a question of fact, the proper standard with which to measure those damages is a question of law." *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 548, 356 S.E.2d 578, 586 (1987). Where a contract has been breached,

> [t]he injured party is entitled to full compensation for his loss, and to be placed as near as may be in the condition which he would have occupied had the contract not been breached. Generally speaking, the amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for its breach.

*Troitino v. Goodman*, 225 N.C. 406, 412, 35 S.E.2d 277, 281 (1945) (citations and quotation marks omitted).

Defendant does not challenge any of the trial court's findings of fact as unsupported by the evidence. He simply

contends that the trial court erred in interpreting the contract to include engineering services and including those costs in its damages calculation, but does not argue that the standard used by the trial court to award damages was otherwise erroneous.

The trial court found that the agreement made defendant "responsible for the installation of the septic system." It further found that engineering services would be a necessary part of the installation process and that defendant was aware of that fact when he signed the contract. Indeed, defendant helped arrange for Summit Consulting to provide the necessary engineering services. Finally, the trial court found that, under the agreement, defendant was "responsible for all costs exceeding $10,000." Defendant does not specifically challenge any of these findings as unsupported by competent evidence. It is clear from these findings that the trial court considered the engineering services to be part of the "installation" portion of the contract.

The trial court found that the total cost of completing the project was $42,331.72, but reduced the damages award by $10,000, because plaintiff had agreed to be responsible for costs up to that amount. It therefore awarded plaintiff $32,331.72. This amount, based on the uncontested findings by

the trial court, was clearly aimed at putting plaintiff in the same position as she would have been had defendant performed the contract—she would spend up to $10,000 and a septic system would be installed on her property appropriate for the house she was constructing. We therefore affirm the trial court's judgment and damages award.

## IV.  Conclusion

We affirm the trial court's order granting plaintiff's motion for summary judgment because the contract was not illegal and it was not impossible for defendant to perform his contractual obligations. Further, we affirm the trial court's judgment awarding plaintiff $32,331.72 in damages.

AFFIRMED.

Judges HUNTER, JR., Robert N. and DILLON concur.