IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-819

Filed: 19 December 2017

Mecklenburg County, No. 15-CVS-9913

MID-AMERICA APARTMENTS, L.P., Plaintiff,

v.

THE BLOCK AT CHURCH STREET OWNERS ASS'N, INC., Defendant.

Appeal by Defendant from summary judgment entered 15 April 2016 by Judge Mark E. Klass in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 January 2017.

> *McAngus, Goudelock & Courie, PLLC, by Colin E. Scott and Jeffrey B. Kuykendal, for Defendant-Appellant.*
>
> *Womble Bond Dickinson (US) LLP, by Mark P. Henriques and Jackson R. Price, for Plaintiff-Appellee.*

INMAN, Judge.

This appeal concerns a private street subject to an express easement and later declared a fire lane by municipal authorities. We hold that the municipal law does not render the easement void as an illegal contract or contrary to public policy, even if the exercise of some easement rights may result in a parking fine.

Defendant The Block at Church Street Owners Association, Inc., ("The Block") appeals from entry of summary judgment permanently enjoining it from interfering with the rights of Plaintiff Mid-America Apartments, L.P., ("Mid-America") under an

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

express easement. The Block argues that: (1) the easement is a void illegal contract that the trial court cannot enforce by injunction; and (2) if the easement is valid, the permanent injunction impermissibly expands Mid-America's rights thereunder. After careful review, we affirm the judgment of the trial court.

## I. Factual and Procedural History

The Block is a homeowner's association comprised of townhome (the "Townhomes") owners in Charlotte, North Carolina. The Townhomes governed by The Block are bordered by South Church Street, Lincoln Street, Winnifred Street, and West Bland Street. Opposite Lincoln Street from the Townhomes is a mixed-use retail and residential development currently owned by Mid-America ("1225 South Church"). The parties' respective interests and issues disputed in this appeal are depicted by the following simplified graphic:

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*



MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

Before The Block came to own Lincoln Street, it was owned by The Boulevard at Church and Bland LLC, while 1225 South Church was owned by The Boulevard at 1225 South Church LLC (collectively, the "Boulevard Entities"). During the development of 1225 South Church, the Boulevard Entities and The Block entered into an "Access, Storm Water and Sanitary Sewer Easement Agreement" (the "Easement"), which established "a non-exclusive, perpetual easement . . . over, upon and across Lincoln Street, for the purposes of providing pedestrian and vehicular access [and] ingress and egress" in favor of 1225 South Church's owner. Three months later, The Block and the Boulevard Entities amended the Easement's Lincoln Street access provisions to add the following language:

> The purpose of this Access Easement shall include, and this Access Easement shall allow for, service and delivery vehicles to be parked on Lincoln Street for such periods of time as are reasonably necessary (i) to provide customary services, including waste removal service, or (ii) to make deliveries, including moving services for any apartments, all for the benefit of the . . . [1225 South Church] Parcel.

After amending the Easement, the Boulevard Entities permitted The Block to add striped parking spaces for its members on Lincoln Street adjacent to 1225 South Church, but left open a portion of the street as a loading area for tenants of 1225 South Church.

By 2015, The Block had come to own Lincoln Street, Mid-America owned 1225 South Church, and the Boulevard Entities no longer had any interest in the

MID-AM. APARTMENTS, L.P. v. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

properties. Thus, Mid-America was the beneficiary of the Easement and its access rights, encumbering The Block's property interest in Lincoln Street.

In May of 2015, the president of The Block, Paul Podgorski ("Mr. Podgorski"), contacted Mid-America regarding leaky dumpsters and debris on Lincoln Street and speeding by motorists, which Mr. Podgorski attributed to Mid-America's tenants. Mr. Podgorski suggested renegotiating the Easement to avoid The Block temporarily prohibiting Mid-America's access to Lincoln Street. Mid-America replied, promising to remedy the leaky dumpster and debris problems but refusing to renegotiate the Easement and instead asserting that any limit to Mid-America's access to Lincoln Street would violate the Easement.

Mr. Podgorski then asserted that The Block possessed the right to temporarily shut down Lincoln Street under the Easement and announced that The Block would be restriping existing parking spaces and would add additional striped spaces in the loading zone used by Mid-America's tenants. Mr. Podgorski also stated that The Block would be barring access to Lincoln Street for Mid-America's tenants for a business day and halting all ingress and egress from one of 1225 South Church's parking decks to perform the striping. He also threatened to file a materialman's lien on 1225 South Church in the event that Mid-America refused to cover fifty percent of the striping costs as "necessary repairs or maintenance" under the Easement.

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

In response, Mid-America offered to provide The Block with assistance in securing favorable pricing for restriping the existing spaces and informed Mr. Podgorski that additional dumpster repairs and debris cleanup was underway. However, it also notified Mr. Podgorski that it would secure an injunction against The Block to protect its rights under the Easement in the event The Block removed Mid-America's loading zone and barred Mid-America's access to Lincoln Street for striping.

Undeterred by a potential injunction, Mr. Podgorski responded once more, informing Mid-America that the striping would be limited to removing Mid-America's loading zone and insisting that the entire street and parking deck used by Mid-America's tenants would be closed for painting. Two business days later, on 26 May 2015, Mid-America filed suit seeking a temporary restraining order, preliminary injunction, permanent injunctive relief, and monetary damages against The Block.

The trial court entered a restraining order (the "Restraining Order") prohibiting The Block from striping the loading zone, restricting access to the parking deck or the portion of Lincoln Street subject to the Easement, threatening such restrictions, and interfering with Mid-America's use of the Easement. Mid-America then amended its complaint to pursue only permanent injunctive relief.

On 31 August 2015, The Block submitted an affidavit from a Charlotte deputy fire marshal to the trial court stating that Lincoln Street was a fire apparatus access

MID-AM. APARTMENTS, L.P. v. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

road and that neither The Block nor Mid-America, including tenants of 1225 South Church and The Block's members, could use Lincoln Street as parking or a loading zone without violation of the North Carolina Fire Code (the "Fire Code").

On 9 September 2015, the trial court entered a preliminary injunction (the "Preliminary Injunction"). The Preliminary Injunction included the restrictions imposed by the earlier Restraining Order and further provided that "[i]f [The Block] is ordered by the Charlotte Fire Department to remove the loading zone from Lincoln Street, then it may seek modification of this injunction from the Court." That same day, the deputy fire marshal ordered The Block to remove any marked parking on the street and the loading zone and informed the parties that "enforcement of illegal parking will be handled by [the Charlotte-Mecklenburg Police Department] and [the Charlotte Fire Department]." Mid-America amended its amended complaint on 30 November 2015 to include reference to the fire marshal's order, and The Block thereafter filed an answer to the amended complaint asserting, *inter alia,* that the Easement was void for illegality. On 8 January 2016, the trial court modified the Preliminary Injunction to permit The Block's compliance with the fire marshal's order.

Entry of both the Restraining Order and the Preliminary Injunction notwithstanding, Mr. Podgorski continued to interfere with Mid-America's rights under the Easement. On 11 December 2015, Mr. Podgorski had an altercation with a

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

Mid-America company police officer over the placement of dumpsters on Lincoln Street. Mr. Podgorski pushed the officer and moved the dumpsters; when the officer attempted to stop him, Mr. Podgorski brandished a pistol and told the officer he "better back off." Two days later, a moving truck for a residential tenant of 1225 South Church was towed by a towing service called by Mr. Podgorski after he saw the truck parked on Lincoln Street. Following a motion to show cause, the trial court held The Block in contempt of the Preliminary Injunction for towing the moving truck.

Mid-America filed a motion for summary judgment on 17 February 2016, seeking final resolution of its sole claim for entry of a permanent injunction. The trial court entered summary judgment for Mid-America and imposed a permanent injunction against The Block on 15 April 2016 (the "Permanent Injunction"). Under the operative language of the injunction:

> [The Block] is permanently enjoined from interfering with [Mid-America's] use and enjoyment of the Easement in any way, including but not limited to:
>
> (1) Pushing [Mid-America's] dumpsters away from the curb on Lincoln Street;
>
> (2) Blocking or otherwise preventing garbage trucks from accessing [Mid-America's] dumpsters;
>
> (3) Harassing delivery trucks and vehicles parked on Lincoln Street, or [Mid-America's] residents;
>
> (4) Preventing delivery trucks and vehicles from being

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

parked on Lincoln Street;

(5) Calling towing companies to tow trucks and vehicles parked on Lincoln Street pursuant to the terms of the Easement . . . ; and

(6) Using Lincoln Street as parking for residents of the Townhomes in a way that interferes with [Mid-America's] use and enjoyment of the Easement, unless expressly authorized by [Mid-America] in writing.

The order also provides, however, that "[nothing] in this Order [shall] be construed to prevent enforcement of the North Carolina Fire Code." The Block timely filed its notice of appeal.[1]

## II. Analysis

The Block argues that the trial court erred in granting summary judgment and entering the Permanent Injunction on two grounds: (1) because parking on Lincoln Street would be in violation of the North Carolina Fire Code, the Easement is void; and (2) alternatively, the Permanent Injunction impermissibly expands the rights granted to Mid-America under the Easement. We address each in turn.

*A. Standard of Review*

The parties disagree about the appropriate standard of review. The Block contends that *de novo* review is properly applied to resolve both of its arguments.

---

[1] The Permanent Injunction did not deter The Block from further attempts to restrict Mid-America's use of Lincoln Street. On 2 June 2016, Mid-America filed a motion for additional injunctive relief after The Block announced plans to completely shut down Lincoln Street for a full business day in order to restripe Lincoln Street as a fire lane without any input or effort to accommodate Mid-America. The trial court granted Mid-America's motion. That order is not before us in this appeal.

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

Mid-America concedes that *de novo* review governs resolution of whether the Easement is void as a matter of law, but argues that the abuse of discretion standard applies to our review of the permanent injunction.

The parties are correct that we apply *de novo* review to orders granting summary judgment as to contracts claimed void for illegality. *Botts v. Tibbens*, 232 N.C. App. 537, 539, 754 S.E.2d 708, 710 (2014). As to the review of error in the trial court's fashioning of its injunctive relief, we hold that the abuse of discretion standard applies. In *Federal Point Yacht Club Ass'n, Inc. v. Moore*, 233 N.C. App. 298, 758 S.E.2d 1 (2014), this Court applied the abuse of discretion standard on review of a summary judgment order imposing a permanent injunction to enforce a restrictive covenant. 233 N.C. App. at 309-10, 758 S.E.2d at 8. In doing so, we expressly rejected the contention that the order was subject to *de novo* review. *Id.* at 312, 758 S.E.2d at 9-10. Because a restrictive covenant is "a negative easement[,]" *Craven Cnty. v. First-Citizens Bank & Trust Co., Inc.*, 237 N.C. 502, 513, 75 S.E.2d 620, 628 (1953), we employ the same standard to review the summary judgment order and permanent injunction appealed here. *See also Buie v. High Point Assocs. Ltd. P'ship*, 119 N.C. App. 155, 161, 458 S.E.2d 212, 216 (1995) ("Whether injunctive relief will be granted to restrain the violation of such [negative easements] is a matter within the sound discretion of the trial court . . . and the appellate court will not interfere unless such discretion is manifestly abused." (internal quotation marks and citation omitted)).

MID-AM. APARTMENTS, L.P. v. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

We reject The Block's argument that the permanent injunction is subject to *de novo* review because it requires interpretation of the Easement. Mid-America's second amended complaint sought either injunctive relief or, in the alternative, a declaration of Mid-America's rights under the Easement pursuant to the Uniform Declaratory Judgment Act. But the trial court granted only equitable relief and did not enter a declaratory judgment. So the only issue before us is whether the trial court abused its discretion in granting that relief. *See, e.g., Kinlaw v. Harris*, 364 N.C. 528, 533, 702 S.E.2d 294, 297 (2010) ("Because the fashioning of equitable remedies is a discretionary matter for the trial court, we review such actions under an abuse of discretion standard.").

## B. *The Easement Is Neither Void for Illegality Nor Contrary to Public Policy*

The Block first argues that the decisions in *Marriott Financial Services, Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 217 S.E.2d 551 (1975), and *Carolina Water Service of North Carolina, Inc. v. Town of Pine Knoll Shores*, 145 N.C. App. 686, 551 S.E.2d 558 (2001), necessitate a holding that the Easement is void as a matter of law for illegality in light of the fact that the parking and loading rights granted under the Easement cannot be exercised without facing a $100 fine for illegal parking in violation of the Fire Code. A close reading of these decisions and other decisions interpreting them does not support this argument.

MID-AM. APARTMENTS, L.P. v. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

In *Marriott Financial*, the plaintiffs sought to rescind a sale of land from the defendants, contending that the sale violated a city ordinance and its enabling statute. 288 N.C. at 126-27, 217 S.E.2d at 555. The ordinance and statute in question were penal in nature; the seller in a non-compliant sale would be guilty of a misdemeanor. *Id.* at 128, 217 S.E.2d at 555. On appeal, this Court determined that the sale was not subject to rescission for illegality, and the North Carolina Supreme Court affirmed the holding in a lengthy analysis of the issue. *Id.* at 127, 217 S.E.2d at 555. Recognizing that "[t]he general rule is that an agreement which violates a constitutional statute or municipal ordinance is illegal and void[,]" the Supreme Court went on to note that "there is also ample authority that the statutory imposition of a penalty, without more, will not invariably avoid a contract which contravenes a statute or ordinance when the agreement or contract is not immoral or criminal in itself." *Id.* at 128, 217 S.E.2d at 555-56. Reviewing "a remarkable divergence in results in cases presenting the question of illegality of contracts because of violation of statutory provisions[,]" *id.* at 128, 217 S.E.2d at 556, the Supreme Court ultimately "ascertain[ed] the intent of the legislative bodies" and held that, because the legislature identified the criminal conduct, the person culpable for such conduct, the penalty imposed therefor, and the means of enforcement, "the Legislature has dealt with the subject completely and did not intend, in addition thereto, that the drastic consequences of invalidity should be visited upon the victim of the offender by

MID-AM. APARTMENTS, L.P. v. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

mere implication." *Id.* at 134-35, 217 S.E.2d at 559-60 (internal quotation marks and citation omitted).

In *Hazard v. Hazard*, 46 N.C. App. 280, 264 S.E.2d 908 (1980), this Court interpreted *Marriott Financial* in the context of a consent judgment entered in a divorce action. 46 N.C. App. at 283, 264 S.E.2d at 910. There, the ex-husband agreed to transfer his interest in certain life insurance policies to his ex-wife, as well as to name her a beneficiary of certain federal benefit plans. *Id.* at 281-82, 264 S.E.2d at 909. However, federal regulations at the time prohibited such acts. *Id.* at 282, 264 S.E.2d at 909. In holding that the consent judgment was not void for illegality under *Marriott Financial*, this Court wrote that "[t]he contract was not immoral, or criminal in itself, or contrary to public policy, but merely provided for the assignment or transfer of a right or benefit which federal law or regulation would not recognize." *Id.* at 283, 264 S.E.2d at 910.

In this case, the portions of the Fire Code identified by the Charlotte fire marshal and cited by The Block do not disclose an intent to invalidate or prohibit easement agreements, or to penalize parties who execute easement agreements. Rather, the Fire Code makes unlawful the limited act of parking in a fire lane, subject to a $100 fine levied against the offender. Thus, the Easement is not "criminal in itself[,]" *Marriott Financial*, 288 N.C. at 128, 217 S.E.2d at 556, but instead merely

MID-AM. APARTMENTS, L.P. v. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

"provide[s] for the assignment . . . of a right or benefit which [the Fire Code] would not recognize." *Hazard*, 46 N.C. App. at 283, 264 S.E.2d at 910.

Nor does *Carolina Water*, the other case cited by The Block, support its position. There, a private water utility had secured an exclusivity agreement with a subdivision in an unincorporated part of Carteret County, North Carolina. *Carolina Water*, 145 N.C. App. at 687, 551 S.E.2d at 559. The agreement required the occupants and landowners within the subdivision to buy all of their water from the private utility and prohibited other water providers from building water lines to service the subdivision. *Id.* at 687, 551 S.E.2d at 558. The Town of Pine Knoll Shores was incorporated after execution of the exclusivity agreement and the subdivision conveyed the streets therein to the new municipality. *Id.* at 688, 551 S.E.2d at 559. The town then sought to build its own municipal water system to serve the subdivision. *Id.* at 688, 551 S.E.2d at 559. The private water utility filed suit to enjoin such action on the basis that it was prohibited by the exclusivity agreement. *Id.* at 688, 551 S.E.2d at 560.

On appeal to this Court, we observed that "[a]n agreement which cannot be performed without violation of a statute is illegal and void," *id.* at 689, 551 S.E.2d at 560, and held that the exclusivity agreement violated: (1) N.C. Gen. Stat. §§ 160A-311, 312, 314, and 317, which granted municipalities the "absolute" authority to build their own water utility system; and (2) N.C. Gen. Stat. § 75-2.1, which prohibited

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

monopolization of any trade or commerce. *Carolina Water* at 689-90, 551 S.E.2d at 560-61.

The case before us is easily distinguished from *Carolina Water*. Nothing in the Easement prevents the City of Charlotte from declaring Lincoln Street a fire lane or enforcing the Fire Code's prohibition on parking in a fire lane by levying fines or other penalties. Nor does an easement that grants a party parking rights on a private road violate any statute. Had the Easement contained an exclusivity agreement analogous to the one in *Carolina Water* that allowed only Mid-America access to Lincoln Street and barred the City of Charlotte from declaring it a fire lane or prohibited enforcement of the Fire Code on the road, or violated a statute by containing such an exclusivity agreement, then the Easement would be void for illegality; it contains no such restrictive provisions, however, and does not violate the law. Indeed, The Block admitted during oral argument of this appeal that if Lincoln Street were widened by ten feet, parking by Mid-America under the Easement would not violate the Fire Code.

We decline to hold that the Fire Code prohibiting parking in fire lanes invalidates the Easement because it is specific conduct allowed by the Easement, rather than the granting of rights by the Easement, that violates the law. This is the distinction between an illegal contract and an impossible contract. *See, e.g., Botts*, 232 N.C. App. at 540, 754 S.E.2d at 711 (distinguishing, in a breach of contract action,

- 15 -

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

the defense of illegality of contract, where a statute renders a contract unlawful, from the defense of legal impossibility, where "performance is rendered impossible by the law" (internal quotation marks and citation omitted)).

Moreover, even if we assume performance of some of the Easement's requirements is impossible because of the City of Charlotte's enforcement of the Fire Code, that may not always be the case. For example, as a result of changes in technology or fire prevention practices, the City might at some point determine that Lincoln Street no longer needs to be designated as a fire lane, or that vehicles may stop or park on Lincoln Street without violating the Fire Code.

For this same reason, we also reject The Block's contention that the Easement is contrary to public policy. We acknowledge that the Fire Code exists "to preserve and protect public health and safety," N.C. Gen. Stat. § 143-138(b1) (2015), but the granting of an easement allowing access and parking rights itself is not contrary to public policy when the factual circumstances, and not the provisions of the easement, would violate the Fire Code. The Easement does not give Mid-America the right to violate the Fire Code. Nor does the Permanent Injunction grant Mid-America any positive right to violate the Fire Code, as it contains the express limitation that nothing "in the Order [shall] be construed to prevent enforcement of the North Carolina Fire Code." By contrast, the exclusivity agreement at issue in *Carolina Water* directly frustrated the "public policy in favor of municipalities' rights to

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

construct and operate water systems, even when private systems are already in operation." 145 N.C. App. at 690, 551 S.E.2d at 561.

That Mid-America and The Block bargained for and received rights that they may not enjoy under the present factual circumstances does not violate public policy, and "the law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish." *Knutton v. Cofield*, 273 N.C. 355, 363, 160 S.E.2d 29, 36 (1968) (internal quotation marks and citation omitted); *see also Hazard*, 46 N.C. App. at 283, 264 S.E.2d at 910 (holding that although a consent judgment in a divorce action "provided for the assignment or transfer of a right or benefit which federal law or regulation would not recognize," it was nonetheless "not . . . contrary to public policy" (internal citations omitted)).

Easements themselves are governed by common law principles of property, *Happ v. Creek Pointe Homeowner's Ass'n*, 215 N.C. App. 96, 109, 717 S.E.2d 401, 409 (2011), and the common law constitutes the public policy of the State until supplanted by statute. *See, e.g., White v. Smith*, 256 N.C. 218, 219, 123 S.E.2d 628, 630 (1962) ("[T]he public policy of this state [is] ascertained by a consideration of the common law and legislative enactments modifying that law."). "[W]hen statutes are in derogation of common law principles, they must be strictly construed. 'Strict construction of statutes requires only that their application be limited to their express terms . . . .' " *Happ*, 215 N.C. App. at 109, 717 S.E.2d at 409 (quoting *Turlington v.*

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

*McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988)) (internal citation omitted). Again, nothing inherent to the Easement violates the Fire Code, and nothing in the Fire Code's prohibition against parking in fire lanes serves to supplant the common law of easements. Applying long established common law principles, we decline to hold the Easement void as contrary to public policy.

*C. The Trial Court Did Not Abuse Its Discretion in Fashioning the Permanent Injunction*

The Block argues that, in the event the Easement is not void, the trial court's entry of the Permanent Injunction impermissibly expands the rights available to Mid-America under the Easement. We disagree.

The Block contends that the Permanent Injunction impermissibly expands the Easement in three ways: (1) it prohibits The Block from parking on Lincoln Street at all; (2) it prohibits The Block from removing trash receptacles belonging to Mid-America from Lincoln Street; and (3) it fails to limit Mid-America's use of the Easement to a "reasonable time." These interpretations of the Permanent Injunction and the Easement are not supported by the documents, and we decline to reverse the trial court for abuse of discretion.

The Block relies on an affidavit stating that the Easement and its subsequent amendment were designed to protect The Block's ability to park on Lincoln Street. Consideration of this affidavit would violate the parol evidence rule, which "prohibits

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

the admission of parol evidence to vary, add to, or contradict a written instrument," *Van Harris Realty, Inc. v. Coffey*, 41 N.C. App. 112, 115, 254 S.E.2d 184, 186 (1979), and The Block has offered no substantive argument or legal authority in support of an exception to this "well-nigh axiomatic" rule. *Jefferson Standard Life Ins. Co. v. Morehead*, 209 N.C. 174, 175, 183 S.E. 606, 607 (1936). Nor is there any ambiguity in the language of the Easement that requires resorting to such extrinsic evidence. *Crider v. The Jones Island Club, Inc.*, 147 N.C. App. 262, 266-67, 554 S.E.2d 863, 866 (2001).

The Block contends in its appellate brief that that it cannot exercise its parking rights without "potentially preventing [Mid-America's] delivery trucks and vehicles from also being parked on Lincoln Street[,]" and that the trial court abused its discretion in "impos[ing] a permanent injunction on [The Block] and its residents from parking on Lincoln Street, which has no basis in the Easement Agreement." The Easement expressly allows for delivery trucks and vehicles to park and service Mid-America and 1225 South Church on Lincoln Street. If The Block's members cannot park without infringing on Mid-America's rights under the Easement, it should have considered such a consequence when it agreed to the Easement. Courts will not intervene on behalf of a party simply because it realizes that a contract was "bad" or "foolish." *Knutton*, 273 N.C. at 363, 160 S.E.2d at 36. Considering that the Permanent Injunction prohibits "preventing delivery trucks and vehicles from being parked on

- 19 -

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

Lincoln Street" because such conduct "interfer[es] with [Mid-America's] use and enjoyment of the Easement[,]" we hold that the trial court did not abuse its discretion in enjoining conduct clearly prohibited by the Easement.

The Block also contends that the trial court abused its discretion in prohibiting The Block from "removing dumpsters from Lincoln Street, which has no basis in the Easement Agreement." The Block cites no legal authority for this argument. The Easement expressly allows Mid-America to use Lincoln Street "to provide customary services, including waste removal service," while the Permanent Injunction makes no reference to dumpsters in Lincoln Street and simply prohibits The Block from "[p]ushing [Mid-America's] dumpsters away from the curb on Lincoln Street[,]" as such conduct "interfer[es] with [Mid-America's] use and enjoyment of the Easement[.]" The Block interprets the Permanent Injunction to allow Mid-America to leave its dumpsters in the middle of Lincoln Street and prohibit The Block from moving the dumpsters off its property. Irrespective of the fact that the Permanent Injunction provides Mid-America with no additional positive rights, moving a dumpster in the middle of Lincoln Street back onto the curb along 1225 South Church would be moving it *towards* the curb, not away from it. Once on the curb and out of Lincoln Street, moving a dumpster away from the curb and Lincoln Street such that a waste removal service is unable to empty it would violate Mid-America's rights under the Easement, as it expressly permits Mid-America's usage of the street to

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

provide waste removal services, making accessible trash disposal a "right[] . . . necessary or incident to the enjoyment of the easement." *Carolina Power & Light Co. v. Bowman*, 229 N.C. 682, 687-88, 51 S.E.2d 191, 195 (1949) (internal citation omitted). Logically, so too would pushing a dumpster into the middle of Lincoln Street, as such actions would block the usage of the street and impede Mid-America's access rights.

The Block concedes that "if the [Permanent Injunction] were limited to enjoining [The Block] from interfering with [Mid-America's] use and enjoyment of the Easement Agreement, the only issue would be whether the Easement Agreement is valid[;]" because the Permanent Injunction does only that, the trial court did not abuse its discretion.

The Block's final alternative argument posits that "it is an abuse of discretion for the trial court to impose a permanent injunction without the qualifying time language expressly included in the Easement Agreement," and that such an omission "fails to provide any recourse to [The Block] if the use of the street expands beyond [a 'reasonable time.']" Again, The Block fails to cite to any legal authority for this proposition. Rule 65 of the North Carolina Rules of Civil Procedure provides: "Every order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined or restrained[.]" N.C. Gen. Stat. § 1A-1, Rule 65(d) (2015). The Block

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

does not cite Rule 65 in its argument, nor does it contend that it is unable to discern the scope of or acts enjoined by the Permanent Injunction.

Nothing in the Permanent Injunction serves to modify the rights provided to Mid-America under the Easement such that it now has a positive right to use Lincoln Street without regard for the limitations imposed thereunder. Nor do the Permanent Injunction's prohibitions against "[h]arassing delivery trucks and vehicles parked on Lincoln Street, or [Mid-America's] residents; . . . [p]reventing delivery trucks and vehicles from being parked on Lincoln Street; . . . [or c]alling towing companies to tow trucks and vehicles parked on Lincoln Street" as "interfer[ences] with [Mid-America's] use and enjoyment of the Easement" constitute an impermissible restriction of The Block's rights, as it was never permitted to engage in such acts inconsistent with the rights granted to Mid-America once the Easement was executed. *Coastal Plains Utils., Inc. v. New Hanover Cnty.*, 166 N.C. App. 333, 341, 601 S.E.2d 915, 921 (2004).

Finally, The Block argues that filing a lawsuit or a complaint with the proper authorities could be construed as "harassment" or attempts at "prevention" of Mid-America's exercise of rights that are precluded by the Permanent Injunction. This argument is at best unripe. The Permanent Injunction is in no way a gatekeeping order that imposes limitations on The Block's ability to file a lawsuit, *see, e.g., Fatta v. M & M Props. Mgmt., Inc.*, 224 N.C. App. 18, 30, 735 S.E.2d 836, 844 (2012)

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

(reviewing an appeal of a gatekeeping order entered pursuant to Rule 11 of the North Carolina Rules of Civil Procedure), and the injunction in question does not prohibit notifying the authorities for a legitimate, non-harassing purpose. *See, e.g., Lee v. O'Brien*, No. COA01-1231, 151 N.C. App. 748, 567 S.E.2d 468, 2002 WL 1792200, at *4 (N.C. Ct. App. 6 Aug. 2002) (unpublished) ("Plaintiff retains the ability to call the police with legitimate complaints which are not for harassing purposes."). The Block has already been informed by the deputy fire marshal that police and fire department officials—not The Block—will enforce the parking law, and the Permanent Injunction does not prohibit The Block from reporting unlawful conduct to those departments. Rather, it expressly provides that nothing "in this Order [shall] be construed to prevent enforcement of the North Carolina Fire Code." Nor does the Permanent Injunction expand the acts already prohibited under the Easement itself, as it merely bars The Block "from interfering with [Mid-America's] use and enjoyment of the Easement in any way," which includes "[h]arassing delivery trucks and vehicles parked on Lincoln Street, or [Mid-America's] residents[,]" and "[p]reventing delivery trucks and vehicles from being parked on Lincoln Street[.]" By law, the Easement already prohibited such interference. *See, e.g., Carolina Central Gas Co. v. Hyder*, 241 N.C. 639, 642, 86 S.E.2d 458, 460 (1955) (noting that a landowner may not "materially impair or unreasonably interfere with the exercise of the rights granted in the easement" (citations omitted)). Whether any future conduct by The Block

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

constitutes a violation of the Permanent Injunction would depend on the facts and circumstances then presented, and any improper determination of contempt or other penalty by the trial court at that stage would be subject to appellate review at that time. *See, e.g., Selective Ins. Co. v. Mid-Carolina Insulation Co., Inc.*, 126 N.C. App. 217, 219, 484 S.E.2d 443, 445 (1997) ("Only a 'party aggrieved' has a right to appeal. A 'party aggrieved' is one whose legal rights have been denied or directly and injuriously affected by the trial court." (quoting N.C. Gen. Stat. § 1-271 (1996) (citations omitted)).

While The Block would be an "aggrieved party" if the Permanent Injunction entered against it was insufficiently clear to satisfy Rule 65 of the North Carolina Rules of Civil Procedure, The Block has not made that argument, and we decline to engage in such an analysis. *See, e.g., Abbott v. N.C. Bd. of Nursing*, 177 N.C. App. 45, 48, 627 S.E.2d 482, 484 (2006) (noting that where a party has not argued an issue, "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant" (internal quotation marks and citation omitted)). This argument is overruled.

### III.  Conclusion

For the foregoing reasons, we hold that the Easement is not void for illegality or as contrary to public policy. We further hold that, because a trial court enjoys "broad discretion to fashion equitable remedies[,]" *Kinlaw v. Harris*, 364 N.C. 528,

MID-AM. APARTMENTS, L.P. V. THE BLOCK AT CHURCH ST. OWNERS ASS'N, INC.

*Opinion of the Court*

532, 702 S.E.2d 294, 297 (2010), and The Block has failed to present any law or argument demonstrating an abuse of that discretion, we must affirm the trial court.

AFFIRMED

Judges CALABRIA and DIETZ concur.